**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

RANDLY IRVIN BEGAY, AKA Randly Begay,
        *Defendant-Appellant.*

No. 14-10080

D.C. No.
3:13-cr-08073-
NVW-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted January 24, 2022
Pasadena, California

Filed May 5, 2022

Before: Mary H. Murguia, Chief Judge, and M. Margaret McKeown, Kim McLane Wardlaw, Johnnie B. Rawlinson, Richard R. Clifton, Milan D. Smith, Jr., Sandra S. Ikuta, Morgan Christen, Mark J. Bennett, Eric D. Miller and Lawrence VanDyke, Circuit Judges.

Opinion by Judge Christen;
Concurrence by Chief Judge Murguia;
Dissent by Judge Wardlaw;
Dissent by Judge Ikuta

## SUMMARY[*]

### Criminal Law

The en banc court affirmed Randly Irvin Begay's convictions for second-degree murder (18 U.S.C. §§ 1111(a) and 1153) and for discharging a firearm during a crime of violence (18 U.S.C. § 924(c)), vacated the district court's order of mandatory restitution, and remanded, in a case in which a divided three-judge panel agreed with Begay's argument that second-degree murder can be committed recklessly and therefore does not qualify as a crime of violence for purposes of § 924(c).

Challenging his second-degree murder conviction, Begay argued for the first time on appeal that the district court erred by failing to instruct the jury that the government bore the burden of proving beyond a reasonable doubt that Begay did not act upon a sudden quarrel or in the heat of passion. A defendant who acts in the heat of passion is guilty of voluntary manslaughter rather than murder. The en banc court could not conclude on this record that the district court plainly erred, where Begay's counsel did not attempt to demonstrate to the court that the evidence would allow the jurors to conclude that Begay acted in the heat of passion, and the evidence did not suggest sudden provocation; the second-degree murder instruction was jointly proffered by the defense and prosecution, and no voluntary manslaughter instruction was requested; and the instruction Begay now

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

insists should have been given could have undermined his primary defense theory—that someone else shot the victim.

Challenging his § 924(c) conviction for discharging a firearm during a crime of violence, Begay argued that second-degree murder can be committed recklessly under § 1111(a) and that, under the categorical approach, "crime of violence" does not encompass offenses that can be committed with a reckless mens rea. The parties disagreed on the applicable standard of review. Because the difference between plain error and de novo review does not change the outcome, the en banc court assumed without deciding that de novo review applies in order to provide the clearest answer. The en banc court held that a conviction for second-degree murder pursuant to § 1111(a) constitutes a crime of violence under the elements clause, 18 U.S.C. § 924(c)(3)(A), because murder is the unlawful killing of a human being with malice aforethought, and to kill with malice aforethought means to kill either deliberately or recklessly with extreme disregard *for human life*. The en banc court explained that such a conviction qualifies because a defendant who acts with the requisite mens rea to commit second-degree murder necessarily employs force "against the person or property of another," and rather than acting with ordinary recklessness, the defendant acts with recklessness that rises to a level of extreme disregard for human life. Emphasizing this distinction between degrees of recklessness, the en banc court was persuaded that the reasoning of *Borden v. United States*, 141 S. Ct. 1817 (2021), sufficiently undermines this court's prior authority suggesting that anything less than intentional conduct does not qualify as a crime of violence.

Because the second-degree murder conviction does qualify as a crime of violence, the en banc court rejected

Begay's challenge to the district court's restitution award based on the absence of a crime-of-violence conviction. The en banc court vacated the restitution award because the district court did not explain how or whether the $19,000 it awarded to compensate the murder victim's mother for the damage to the van in which the victim was shot satisfied 18 U.S.C. § 3663A. The en banc court remanded for recalculation and for an explanation of reasoning.

Chief Judge Murguia, joined by Judge Clifton, concurred. She wrote that she is persuaded that someone who commits second-degree murder necessarily satisfies the standard set forth by a plurality of the Supreme Court in *Borden*: that the perpetrator has directed his actions against, or targeted, other individuals, even if he neither aims at nor consciously desires to harm them.

Judge Wardlaw dissented from portions of the majority opinion concerning the § 924(c) conviction and the restitution award. She concurred in portions of Judge Ikuta's partial dissent, except as to a supposed need to remedy any "problem" with the legal conclusion that § 1111(a) second-degree murder is not a categorical "crime of violence" under § 924(c). She wrote that *Borden*'s rationale compels the conclusion that "depraved heart" second-degree murder is not a categorical match with § 924(c)'s elements clause, a conclusion that derives directly from the Supreme Court's development of the categorical approach and its corresponding invalidation of vague residual clauses. She would affirm the second-degree murder conviction, but would vacate the sentence on both counts of conviction, remand for resentencing, and vacate the restitution award.

Judge Ikuta, joined by Judge VanDyke, dissented from the majority's holding that second-degree murder is a crime of violence under the elements clause. She wrote that Congress meant for second-degree murder to qualify as a crime of violence under the residual clause, 18 U.S.C. § 924(c)(3)(B), but the Supreme Court determined that the residual clause was unconstitutionally vague, and defined the elements clause, 18 U.S.C. § 924(c)(3)(A), as including only conduct that targets or is directed at another individual. She wrote that because second-degree murder can be committed with extreme recklessness, and so does not necessarily involve a directed or targeted use of force against the victim, second-degree murder is not a categorical match and does not qualify as a crime of violence under the elements clause.

## COUNSEL

M. Edith Cunningham (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Krissa M. Lanham (argued) and Robert L. Miskell, Deputy Appellate Chiefs; Karla Hotis Delord, Assistant United States Attorney; Appellate Chief; Glenn B. McCormick, Acting United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

Mitchell Keiter, Keiter Appellate Law, Beverly Hills, California, for Amicus Curiae Amicus Populi.

**OPINION**

CHRISTEN, Circuit Judge:

Randly Irvin Begay appeals his federal convictions for second-degree murder in violation of 18 U.S.C. §§ 1111(a) and 1153, and for discharging a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c). Begay also appeals the district court's restitution award. Begay raises three primary arguments. First, he argues the district court erred because it failed to instruct the jury that to convict Begay of second-degree murder, the government bore the burden of proving beyond a reasonable doubt that he did not act in the heat of passion or "upon a sudden quarrel." Second, Begay urges us to reverse his § 924(c) conviction because second-degree murder, he argues, can be committed recklessly and therefore does not constitute a crime of violence. Last, Begay argues the district court's restitution award was plainly erroneous.

A divided three-judge panel of our court agreed with Begay's second argument and held that second-degree murder does not qualify as a crime of violence for purposes of 18 U.S.C. § 924(c). *See United States v. Begay*, 934 F.3d 1033, 1038 (9th Cir. 2019). The government petitioned for panel rehearing, but we held that petition in abeyance because ongoing en banc proceedings in *United States v. Orona*, 923 F.3d 1197 (9th Cir. 2019), asked whether an offense committed with ordinary recklessness qualifies as a violent felony under the Armed Career Criminal Act (ACCA), *id.* at 1199; *see also United States v. Orona*, 942 F.3d 1159 (9th Cir. 2019). The *Orona* appeal was ultimately dismissed because the petitioner passed away, *see United States v. Orona*, 987 F.3d 892, 893 (9th Cir. 2021), but while *Orona*

was still pending, the Supreme Court granted certiorari in *Borden v. United States*, 141 S. Ct. 1817 (2021), to address "whether a criminal offense can count as a 'violent felony' [under the ACCA] if it requires only a *mens rea* of recklessness," *id.* at 1821. The issue in *Borden* is closely related to the one presented in Begay's case, so we continued to hold the government's petition in abeyance.

Ultimately, the Supreme Court's decision in *Borden* stopped short of deciding whether offenses that may be committed with mental states *between* ordinary recklessness and knowledge (such as "depraved heart" and "extreme recklessness") qualify as crimes of violence, *id.* at 1825 n.4, but a majority of the nonrecused active judges of our court voted to rehear Begay's case en banc after *Borden* was decided. Now, having considered the parties' supplemental briefs and argument, we hold that second-degree murder qualifies as a crime of violence pursuant to § 924(c)(3)(A). We affirm Begay's convictions, but vacate and remand the district court's restitution order.

I

On the morning of March 4, 2013, Begay, Meghan Williams (Begay's girlfriend), Roderick Ben, and Lionel Begay (Begay's nephew) sat in a van parked outside Begay's parents' home on the Navajo Nation Indian Reservation in Tuba City, Arizona. Ben was in the driver's seat, Lionel was in the front passenger seat, and Williams and Begay were sitting behind the driver's and passenger's seats, respectively. All four of the van's occupants had been drinking alcohol and smoking methamphetamine for several hours. Williams and Begay got into an argument about her alleged infidelities, and Begay accused her of cheating on him with Ben. Lionel later

testified that this type of argument was "pretty normal" for Williams and Begay. According to Williams's testimony, Begay said he "was tired of everybody calling him and thinking that he was a bitch for being with [her]."

Williams testified that at some point during the argument, Begay pulled a gun out of his pocket and placed it on his right leg. Williams told the jury that Begay said he was "not going to be a bitch no more," and she saw Begay pick up the gun. Williams testified that she put her head down, "curled up," and then she heard a gunshot. When Williams looked up, she saw that Ben had been shot in the head. Law enforcement officers later found a shell casing on the floor between the two front seats of the van, but they never found the gun used in the shooting.[1]

A federal grand jury indicted Begay on one count of second-degree murder (Count 1) and one count of discharging a firearm during a crime of violence (Count 2). At trial, the parties jointly submitted jury instructions for second-degree murder. Begay's attorney did not object to the instructions as presented nor request a voluntary manslaughter instruction. The district court instructed the jurors that to find Begay guilty on Count 2, the government bore the burden to prove beyond a reasonable doubt that Begay "committed the crime of murder in the second degree as charged in Count 1 of the indictment, which I instruct you is a crime of violence."

Begay's theory at trial was that someone else in the van shot Ben, but during his closing argument, defense counsel

---

[1] Lionel's accounts to investigators and at trial conflicted as to whether he was still in the van when Ben was shot.

also briefly argued that the government had not proved the element of malice aforethought because there was no evidence that Begay had deliberated or acted with extreme disregard for human life.  The government's theory was that Begay shot Ben, and the government argued that the evidence "fully corroborated" Williams's version of the events and disproved Begay's "stories."  In addition to Williams's testimony describing what happened in the van, the government presented testimony from the medical examiner who performed an autopsy on Ben's body.  He testified that the trajectory of the gunshot suggested a bullet entered Ben's skull on the right side above his ear and exited on the left. During its rebuttal, the government referred to Williams's and Lionel's testimony that Begay and Williams were arguing before Ben was shot.

The jury convicted Begay on both counts, and the district court sentenced him to 204 months on Count 1 and 120 months on Count 2 to be served consecutively.[2]  The district court also imposed $23,622 in mandatory restitution pursuant to 18 U.S.C. § 3663A.  Begay appeals both convictions and the restitution award.

## II

Generally, "[w]e review de novo whether a criminal conviction is a 'crime of violence' and whether a jury

---

[2] Begay's conviction on Count 2 subjected him to a mandatory ten-year consecutive sentence pursuant to 18 U.S.C. § 924(c)(1)(A)(iii). *See also* § 924(c)(1)(D)(ii).  The government objected that the district court improperly varied downward based upon the 120-month mandatory minimum sentence for the § 924(c) conviction, but the government did not appeal Begay's sentence.

instruction misstated the elements of an offense." *United States v. Benally*, 843 F.3d 350, 353 (9th Cir. 2016). But where a defendant makes an argument for the first time on appeal that was not the basis of an objection in the trial court, we review for plain error. *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1060 (9th Cir. 2019); *see also* Fed. R. Crim. P. 52(b). "Plain error requires an (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Smith*, 282 F.3d 758, 765 (9th Cir. 2002) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). We have discretion to notice a plain error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

## III

Because this shooting took place on the Navajo Nation Indian Reservation, it occurred within "Indian country" for the purposes of the Major Crimes Act. *See* 18 U.S.C. §§ 1151, 1153; *see also Benally*, 843 F.3d at 352. "An 'Indian' who commits murder . . . in 'Indian country' is subject to applicable federal criminal laws." *Id.* (citing § 1153(a)). Though the Act does not define the term "Indian," "[t]he generally accepted test for Indian status considers (1) the degree of Indian blood; and (2) tribal or government recognition as an Indian." *United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Keys*, 103 F.3d 758, 761 (9th Cir. 1996)). Here, the parties stipulated that Begay "has descendant status as an Indian, such as being a blood relative to a parent, grandparent, or great-grandparent who is clearly identified as an Indian from a federally recognized tribe." We have jurisdiction pursuant to 28 U.S.C. § 1291.

IV

Begay challenges his second-degree murder conviction based on the district court's jury instructions for the first time on appeal. He argues that because he made a showing at trial of "sudden quarrel or heat of passion," the district court erred by failing to instruct the jury that the government bore the burden of proving beyond a reasonable doubt that Begay did not act upon a sudden quarrel or in the heat of passion. Begay argues that the government bears the burden of proving each element of the charged offense, and a rational jury could have found reasonable doubt about whether he acted out of passion rather than malice. Begay observes that even the government argued he acted "out of rage and passion during a heated argument about infidelity." We review for plain error because Begay did not raise this argument in the district court. *See Cuevas-Lopez*, 934 F.3d at 1060.

"A defendant is entitled to an instruction upon his theory of the case if the record contains evidentiary support for the theory and the theory is supported by law." *United States v. Lesina*, 833 F.2d 156, 160 (9th Cir. 1987). In a murder trial, evidence of a sudden quarrel or heat of passion can serve as a defense to the murder charge, *United States v. Quintero*, 21 F.3d 885, 890 (9th Cir. 1994), because a heat of passion and adequate provocation finding "negates the malice that would otherwise attach," *United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994). A defendant who acts in the heat of passion is guilty of voluntary manslaughter rather than murder. *Id.*

For this reason, the prosecution bears the burden of proving beyond a reasonable doubt the absence of the heat of passion when the issue is properly presented, *Mullaney v.*

*Wilbur*, 421 U.S. 684, 703 (1975), and the trial court must instruct the jury that the government bears this burden, *see Lesina*, 833 F.2d at 160. But such an instruction is only required if the defense is fairly raised. *See United States v. Roston*, 986 F.2d 1287, 1290 (9th Cir. 1993) ("The prosecution is required to negate a killing in the heat of passion only if that issue is 'properly presented . . . .'" (quoting *Mullaney*, 421 U.S. at 704)). To obtain a jury instruction regarding voluntary manslaughter, a defendant must demonstrate to the trial court that the evidence would allow reasonable jurors to conclude the defendant acted out of passion rather than malice. *See Quintero*, 21 F.3d at 891.

Here, the evidence presented at trial certainly suggested that Begay and Williams quarreled prior to the shooting, but defense counsel did not request an instruction for voluntary manslaughter, nor an instruction that the prosecution bore the burden of establishing the absence of heat of passion, nor did the defense object to the lack of those instructions. Instead, Begay's theory at trial was that he did not shoot Ben. Begay's counsel did argue that the government had not met its burden of proving that Begay acted with malice because there was no evidence Begay deliberated before acting. Specifically, he argued to the jury that "to deliberate and to intend to do something is not to simply be high and pull a trigger," and "[t]here's no deliberation here." But the primary defense theory was that Begay was not the shooter, and the government's case focused on why the evidence showed that Begay, not Williams or Lionel, shot Ben.

On this record, we cannot conclude the district court plainly erred by failing to instruct the jury that the government bore the burden of proving the absence of heat of passion. Begay's counsel did not attempt to demonstrate to

the court that the evidence would allow the jurors to conclude that Begay acted in the heat of passion, and the evidence did not suggest sudden provocation; rather, it suggested that Begay and Williams had argued about her alleged infidelities before.  The second-degree murder instruction was jointly proffered by the defense and prosecution, no voluntary manslaughter instruction was requested, and the instruction Begay now insists should have been given could have undermined his primary defense theory—that someone else shot Ben—by inviting the jury to consider that even if Begay was the shooter, he only acted upon sudden provocation. Because the district court did not plainly err by giving the jointly requested jury instructions, we affirm Begay's conviction for second-degree murder.

V

Begay's second argument asks us to reverse his § 924(c) conviction for discharging a firearm during a crime of violence.  He argues that second-degree murder can be committed recklessly under § 1111(a), and urges us to conclude that the statutory definition of "crime of violence" does not encompass offenses that can be committed with a reckless mens rea.

The parties disagree on the standard of review that we should apply to this issue.  Begay's brief applied de novo review because whether second-degree murder is a crime of violence "is purely a question of law" and the government will suffer no prejudice if we conduct a de novo analysis. The government's brief applied plain error review because Begay never raised his "crime of violence" argument before the district court.  The government argued that if the district court erred, its error was not plain because our court had

upheld other § 924(c) convictions based on second-degree murder. *See United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009), *overruled on other grounds*, 673 F.3d 1038 (9th Cir. 2011) (en banc); *United States v. Houser*, 130 F.3d 867, 868 (9th Cir. 1997); *United States v. Percy*, 250 F.3d 720, 729 (9th Cir. 2001).

When asked at oral argument what standard of review should apply, the government responded that the outcome of our analysis would be the same whether we apply plain error or de novo review. We agree with the government that the difference between these two standards does not change the outcome of Begay's appeal, but the government's original brief relied on step two of the plain error standard (i.e., it argued that if there was error, it was not plain) and devoted just one paragraph to discussing the categorical approach. The government's supplemental brief focused on the categorical analysis and did not argue the standard of review at all. Because the outcome does not change, we assume without deciding that de novo review applies in order to provide the clearest answer to the categorical inquiry at the heart of this long-pending appeal.[3]

---

[3] The government did not ask us to revisit our precedent allowing the application of de novo review to pure questions of law where we are satisfied the government will not be prejudiced. *See, e.g.*, *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009) (explaining we may review de novo "when we are presented with a question that 'is purely one of law' and where 'the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court'" (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1268 (9th Cir. 2001)); *United States v. Lillard*, 935 F.3d 827, 833 (9th Cir. 2019). And because the outcome is the same regardless of what standard we apply, we need not consider whether that precedent can be reconciled with the Supreme Court's cases interpreting Federal Rule of Criminal

A

Begay was convicted of discharging a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c). This conviction subjected him to a mandatory minimum sentence of ten years that must be served consecutively. Section 924(c)(3) defines the term "crime of violence":

> [A]n offense that is a felony and–
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

We commonly refer to subpart A of § 924(c)(3) as the "elements clause" and subpart B as the "residual clause." *See United States v. Davis*, 139 S. Ct. 2319, 2324 (2019). The Supreme Court recently invalidated the residual clause as unconstitutionally vague.[4] *See id.* at 2336. Therefore, the

---

Procedure 52(b). *See United States v. Yijun Zhou*, 838 F.3d 1007, 1015 (9th Cir. 2016) (Graber, J., concurring) (arguing that "[t]he Supreme Court has left very little room—if any at all—for the judicial creation of exceptions to Rule 52(b)").

**[4]** After Begay filed his opening brief in this court, the Supreme Court invalidated the residual clause in § 924(e)(2)(B), holding it is unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591, 597 (2015). Less than three years later, the Court extended *Johnson*'s reasoning to the residual clause in 18 U.S.C. § 16. *See Sessions v.*

inquiry in Begay's case is limited to deciding whether his murder conviction qualifies as a crime of violence under the elements clause.

We apply the categorical approach described in *Taylor v. United States*, 495 U.S. 575, 598–600 (1990), to decide whether the offense of second-degree murder qualifies as a crime of violence for purposes of § 924(c). *See Borden v. United States*, 141 S. Ct. 1817, 1822 (2021). "Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant," and our focus is "whether the elements of the statute of conviction meet the federal standard." *Id.*; *see also Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) ("Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved . . . facts equating to the generic federal offense" (alterations and internal quotation marks omitted)).

As applied to the charges in Begay's case, the categorical approach requires that we ask whether the elements of the second-degree murder statute necessarily involve a defendant's "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Unless the least culpable act criminalized in the second-degree murder statute entails that force, the statute is not a categorical match with the elements clause, and it does not qualify as a crime of violence. *See Borden*, 141 S.

---

*Dimaya*, 138 S. Ct. 1204, 1213–16 (2018). Before the three-judge panel issued its decision in this appeal, the Court invalidated the residual clause in § 924(c)(3)(B). *See Davis*, 139 S. Ct. at 2336.

Ct. at 1822; *see also United States v. Buck*, 23 F.4th 919, 924 (9th Cir. 2022).

Federal law defines "murder" as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a)**[5]**; *see also* Ninth Cir. Model Crim. Jury Instruction 8.108. "To kill with malice aforethought means to kill *either* deliberately and intentionally *or* recklessly with extreme disregard *for human life*." *Id.* (emphasis added); *United States v. Houser*, 130 F.3d 867, 871 (9th Cir. 1997). We have described malice aforethought as "a callous and wanton disregard *of human life*," and "extreme indifference to the value *of human life*." *United States v. Pineda-Doval*, 614 F.3d 1019, 1037 (9th Cir. 2010) (emphasis added) (internal quotation marks omitted); *see also United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994) ("To establish malice or malice aforethought in a homicide prosecution, the government must prove that the defendant killed intentionally or recklessly with extreme disregard for human life.").

The mens rea of "malice aforethought covers four different kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony." *Pineda-Doval*, 614 F.3d at 1038. Here, we focus on the mental state of depraved heart (i.e., reckless indifference) because it encompasses the least culpable conduct criminalized by § 1111(a).

---

**[5]** Section 1111(a) identifies several specific types of murder that qualify as murder in the first degree, and defines "[a]ny other murder [as] murder in the second degree."

B

When identifying crimes of violence, the law distinguishes between the "four states of mind, as described in modern statutes and cases, that may give rise to criminal liability." *Borden*, 141 S. Ct. at 1823. "[I]n descending order of culpability," those mental states are: purpose, knowledge, recklessness, and negligence. *Id.* Over twenty years ago in *United States v. Trinidad-Aquino*, 259 F.3d 1140 (9th Cir. 2001), our court concluded that a crime of violence could be committed recklessly but not negligently, *see id.* at 1145. The Supreme Court partially affirmed our interpretation in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where it held that offenses that may be committed with a mens rea of negligence fall short of qualifying as crimes of violence under the elements clause of 18 U.S.C. § 16(a), *see* 543 U.S. at 9–10, but *Leocal* did not address crimes that may be committed with a reckless mens rea.[6] *Leocal* interpreted the word "use" in the phrase "use, attempted use, or threatened use of physical force" to require "a higher degree of intent than negligent or merely accidental conduct," and it deemed "critical" § 16(a)'s requirement that a person use "force *against the person or property of another*." *Id.* at 9. After *Leocal*, we held that "crimes involving the reckless use of

---

[6] The elements clause in 18 U.S.C. § 16 is "virtually identical" to the one in § 924(c)(3), so "we interpret their plain language in the same manner." *United States v. Benally*, 843 F.3d 350, 353–54 (9th Cir. 2016). The elements clause in the ACCA's definition of "violent felony" is also nearly identical to § 924(c)(3)(A) and § 16(a), but it only applies to offenses that have "as an element the use, attempted use, or threatened use of physical force against the *person* of another," § 924(e)(2)(B)(i), as opposed to "against the *person or property* of another," § 924(c)(3)(A). *Cf. Borden*, 141 S. Ct. at 1824.

force" do not constitute crimes of violence because "[r]eckless conduct, as generally defined, is not purposeful." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1129–30 (9th Cir. 2006) (en banc) (holding "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence").

In *Voisine v. United States*, 136 S. Ct. 2272 (2016), the Supreme Court considered whether a Maine conviction for domestic assault that included a mens rea of "intentionally, knowingly, or recklessly" qualified as a "misdemeanor crime of domestic violence" pursuant to 18 U.S.C. § 922(g)(9), *see* 136 S. Ct. at 2277–78. The phrase "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33)(A) to be a misdemeanor that "has, as an element, the use or attempted use of physical force," and is "committed by a current or former spouse, parent, or guardian of the victim" or other similar individuals as defined by the statute. As in *Leocal*, the Court focused on the term "use" in the phrase "use or attempted use of physical force" to conclude that "the force involved in a qualifying assault must be volitional," because "an involuntary motion, even a powerful one, is not naturally described as an active employment of force." *Voisine*, 136 S. Ct. at 2278–79. The Court concluded that reckless conduct sufficed, but the elements clause at issue in *Voisine* did not require that a defendant use force "against another," which *Leocal* described as "critical." *Voisine* "made clear that other statutory definitions—whether the one in *Leocal* or the near-identical one in the ACCA's elements

clause—might exclude reckless offenses." *Borden*, 141 S. Ct. at 1825.[7]

*Borden* picked up where *Voisine* left off. There, Charles Borden pleaded guilty to a felon-in-possession charge, *id.* at 1822, and the government sought an enhanced sentence pursuant to the ACCA. Borden argued that his prior conviction for reckless aggravated assault under Tennessee law did not qualify as a "violent felony" because the Tennessee statute only required reckless conduct. *Id.* Thus, the question presented to the Supreme Court in *Borden* was "whether [the ACCA's] elements clause's definition of 'violent felony'—an offense requiring the 'use of physical force against the person of another'—includes offenses criminalizing reckless conduct." *Id.* at 1825. *Borden* decided that reckless conduct does not meet the standard for a "violent felony" because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action *at, or target, another individual*" and reckless conduct is not aimed in that prescribed manner. *Id.* (emphasis added).

Begay and the dissent both argue that *Borden* supports the conclusion that a § 1111(a) murder conviction does not qualify as a crime of violence because, they argue, § 1111(a) may be conducted with a mens rea of recklessness. But the *Borden* Court only considered whether *ordinary* reckless conduct necessarily satisfies the elements clause, *see* 141 S. Ct. at 1825; it expressly declined to reach whether offenses

---

[7] In the wake of *Voisine*, *Leocal*, and *Fernandez-Ruiz*, we held that involuntary manslaughter—which requires a mens rea of "gross negligence"—is not a crime of violence under § 924(c)(3). *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016).

that may be committed with mental states between ordinary recklessness and knowledge can qualify as crimes of violence. *Id.* at 1825 n.4. *Borden*'s footnote 4 is unambiguous on this point. It reads: "Some States recognize mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge. We have no occasion to address whether offenses with those mental states fall within the elements clause." *Borden*, 141 S. Ct. at 1825 n.4. *Borden* went out of its way to signpost that it did not reach mental states like the one at issue here: those between recklessness and knowledge. *See id.* Though *Borden* did not squarely decide the issue presented in Begay's appeal, its analysis of the statutory phrase "against the person of another" is instructive.

C

The elements clause in § 924(c) provides that a felony offense qualifies as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). *Borden* explained that the ACCA's elements clause necessarily requires conduct that is "oppositional" in nature; i.e., conduct in which one "actively employs physical force." 141 S. Ct. at 1826. From there, the Court reasoned that the term "against" within the phrase "use of physical force against the person of another" "introduc[es] [a] conscious object" that is the recipient of the force. *Id.*

Drawing on *Borden*, we conclude that a conviction for second-degree murder pursuant to § 1111(a) constitutes a crime of violence because murder is the unlawful killing of a human being with malice aforethought, *see* 18 U.S.C. § 1111(a), and to kill with malice aforethought means to kill

either deliberately or recklessly with extreme disregard *for human life*, *see* Ninth Cir. Model Crim. Jury Instruction 8.108. As we explained in *Pineda-Doval*, malice aforethought requires a quantum of risk that is very high and also requires that the nature of the risk concern injury to others. *See* 614 F.3d at 1038 (explaining that malice aforethought requires conduct creating "a *very high* degree of risk of injury to other persons" and that the defendant "be aware of that risk" (internal quotation marks omitted)).

A § 1111(a) conviction qualifies as a crime of violence because a defendant who acts with the requisite mens rea to commit second-degree murder necessarily employs force "against the person or property of another," and rather than acting with ordinary recklessness, the defendant acts with recklessness that rises to the level of extreme disregard for human life. The First Circuit reached a similar conclusion in *United States v. Báez-Martínez*, 950 F.3d 119, 127–28 (1st Cir. 2020). Although the First Circuit ruled before *Borden*, its reasoning is substantially similar to the reasoning we adopt here.

Our case law recognizes that there are varying degrees of recklessness. For example, we have frequently described the concept of "depraved heart" as the functional equivalent of "reckless and wanton, and a gross deviation from the reasonable standard of care," *Pineda-Doval*, 614 F.3d at 1038, and we distinguish reckless conduct that amounts to a depraved heart from conduct involving "simple recklessness," *id.* at 1040. In *Pineda-Doval*, we explained that a "district court's finding of recklessness is not equivalent to a finding of malice aforethought" and "second-degree murder require[s] a finding of extreme recklessness

evincing *disregard for human life*, not simple recklessness."**8**
*Id.* (emphasis added); *see also United States v. Esparza-Herrera*, 557 F.3d 1019, 1024 (9th Cir. 2009) (per curiam) (concluding that Arizona's aggravated assault statute "is broader than the Model Penal Code's definition of aggravated assault because the Arizona statute alone encompasses acts done with *ordinary recklessness*" (emphasis added)).  "The difference between th[e] recklessness [that] displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and th[e] recklessness that amounts only to manslaughter lies in the quality of awareness of the risk."  *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987) (quoting *United States v. Dixon*, 419 F.2d 288, 292–93 (D.C. Cir. 1969) (Leventhal, J., concurring)).

The categories of criminal homicide reflect the distinctions between degrees of recklessness.  "A person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk . . . of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."  Model Penal Code § 2.02(2)(c) (2021).

---

**8** We also explained in *Pineda-Doval* that "the expansion of malice aforethought since early American common law" supports why we distinguish the extreme reckless conduct involved in depraved heart murders from ordinary recklessness.  *Id.* at 1038.  At early common law, "[m]alice aforethought was meant literally"; "murder required malice, an intent to kill and perhaps also an element of hatred, and aforethought, advance planning or deliberation."  *Id.* (internal quotation marks omitted).  Over time, courts expanded the crime of murder to "killings that, while not specifically intended or planned, were grievous enough to be considered murder."  *Id.*  *See also Báez-Martínez*, 950 F.3d at 125 ("The mens rea required for murder at common law was and remains 'malice aforethought.'").

Accordingly, criminal homicide "constitutes *manslaughter* when . . . it is committed recklessly." § 210.3(1)(a) (emphasis added). But "criminal homicide constitutes *murder* when . . . it is committed recklessly under circumstances manifesting *extreme indifference to the value of human life*." § 210.2(1)(b) (emphasis added).

We recognize that some of our earlier case law suggested that a crime of violence requires intentional conduct. *See United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008) (citing *Leocal* and *Fernandez-Ruiz* and stating "in order to be a predicate offense under . . . 18 U.S.C. § 16 . . . the underlying offense must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission."); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc) ("The bedrock principle of *Leocal* is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another."). But our holding in *Gomez-Leon* was that "homicide committed with a mens rea of only ordinary negligence" is not a crime of violence. 545 F.3d at 795. Similarly, *Fernandez-Ruiz* held only that offenses committed with a mens rea of recklessness or gross negligence do not qualify as crimes of violence. *See* 466 F.3d at 1130. We are persuaded that the reasoning of *Borden* sufficiently undermines our prior authority suggesting that anything less than intentional conduct does not qualify as a crime of violence. The distinction between degrees of recklessness is critical to our conclusion. *See Borden*, 141 S. Ct. at 1825 n.4.

The dissent argues that the degree of recklessness required for second-degree murder cannot be characterized as "oppositional," but it does not grapple with the fact that the

killing of another human being with malice aforethought requires finding that the defendant acted with *extreme indifference*, and that the indifference was *toward human life*. The elements of second-degree murder stand in stark contrast to the elements of offenses that do not require a showing of malice aforethought. Second-degree murder does not require conduct intended to harm, nor that a defendant target his conduct at any particular individual, but as illustrated by the examples described in the dissent, the conduct is fairly characterized as extreme and necessarily oppositional because a defendant "certainly must be aware that there are potential victims before he can act with indifference toward them." *United States v. Báez-Martínez*, 950 F.3d 119, 127 (1st Cir. 2020) (comparing ordinary "reckless conduct" to conduct committed with malice aforethought). Accordingly, as the First Circuit observed, a defendant who acts with extreme indifference to the value of human life can "fairly be said to have actively employed force (i.e., 'use[d]' force) 'against the person of another.'" *Id.* (alterations in original).

## D

The Supreme Court has expressly considered a statute's "context and purpose" when applying the categorical approach, even though the facts of a case are irrelevant in a categorical analysis. *See, e.g.*, *Borden*, 141 S. Ct. at 1830; *see also Báez-Martínez*, 950 F.3d at 127 ("[I]n interpreting any statute, we must not lose sight of the common sense that likely informed Congress's understanding of the ACCA's terms."). *Leocal* endorsed the idea that context must be considered when it stated, "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" *Borden*, 141 S. Ct. at 1830 (quoting *Leocal*, 543 U.S. at 11).

The Supreme Court looked to context and purpose in *Voisine* and considered that, rather than imposing a mandatory multi-year consecutive prison term, the law at issue in that case bars people convicted of misdemeanor acts of domestic violence from possessing firearms. *See* 136 S. Ct. at 2280. The Court also considered that Congress did not require the force in that domestic violence statute to be directed against another. *See id.* *Voisine* concluded that reckless conduct qualified because the word "use," standing alone, "is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness." *Id.* at 2279. Similarly, *Borden* considered that the ACCA imposes an exceptionally severe sanction for those convicted of violent felonies, and that the inclusion of offenses that may be committed recklessly would sweep offenders, including reckless drivers, into a statutory scheme intended to enhance the prison terms of "armed career" offenders. 141 S. Ct. at 1830–31.

Here, too, context is important. Begay was convicted of second-degree murder and, on the whole, offenses charged as murder are among the most culpable of crimes. *See Tison v. Arizona*, 481 U.S. 137, 157 (1987) (holding "that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state"). These crimes necessarily require a mental state of malice aforethought, which, as we have explained, involves "an intentional act that ha[s] a high probability of resulting in death." *Pollard v. White*, 119 F.3d 1430, 1434 (9th Cir. 1997).

Begay calls our attention to reckless or drunk driving resulting in death and argues that it involves "prime examples of reckless conduct" that cannot satisfy the elements clause.

Begay is correct to focus our analysis on the least culpable conduct that qualifies as second-degree murder, but we are mindful that § 924(c) necessarily arises only in situations where a firearm is involved.  It will be the exceptionally rare drunk driving case that involves second-degree murder and the discharge of a firearm.[9]

As the First Circuit observed, the decision to charge a defendant with murder only arises in the unusual drunk driving case, because "in terms of moral depravity, murder is often said to stand alone among all other crimes." *Báez-Martínez*, 950 F.3d at 128 (internal quotation marks omitted). The charging decisions in these cases are consistent with our distinction between degrees of recklessness because "[c]ases where the defendant drove recklessly, but not wildly, generally fall into the lesser categories of manslaughter or criminal negligence." *United States v. Pineda-Doval*, 614 F.3d 1019, 1030 (9th Cir. 2010).  As the First and Fourth Circuits have observed, "'the vast majority of vehicular homicides,' including 'the average drunk driving homicide,' are treated only as manslaughter." *Báez-Martínez*, 950 F.3d at 126 (quoting *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984)) (explaining that a drunk driving homicide is more likely to be treated as murder in the extreme instances, such as "when a defendant with a blood alcohol content of .315% drives nearly 100 miles per hour in the oncoming lane of a busy thoroughfare and kills another driver in a collision"); *cf. United States v. Gomez-Leon*, 545 F.3d 777, 793 (9th Cir. 2008) (explaining that most vehicular homicide

---

[9] *See In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017) (observing "the categorical approach is a particularly bad fit in § 924(c) cases because § 924(c) . . . penalizes, in broad terms, the use of a firearm during violent crimes").

statutes "require proof of intoxication while driving a vehicle and are punished less severely than manslaughter"). Nothing in our opinion should be read to suggest that a drunk driving case that results in a death necessarily represents conduct evidencing the use of force directed at another with extreme disregard for human life. But consideration of context reinforces the conclusion that second-degree murder qualifies as a crime of violence pursuant to the elements clause of § 924(c)(3).

VI

Finally, Begay challenges the district court's award of restitution. We generally review de novo the legality of an order of restitution, *see United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014), but we review for plain error when the defendant objects to restitution for the first time on appeal, *United States v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009).

The Mandatory Victims Restitution Act (MVRA) requires a court to order a defendant to pay restitution "to the victim of the offense or, if the victim is deceased, to the victim's estate," "when sentencing a defendant convicted of an offense" that is a "crime of violence" as defined in 18 U.S.C. § 16. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(i). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of [the] offense." § 3663A(a)(2). "The goal of restitution under the MVRA is to make the victim whole. Consequently, any award is limited to the victim's actual losses." *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) (citations and internal quotation marks omitted). "Nonetheless, exact precision is not required and district courts do have a degree

of flexibility in accounting for a victim's complete losses."
*Id.* at 954.

The district court in Begay's case adopted the restitution
award recommended by the probation officer in the
presentence report. The probation officer recommended an
award of $23,622, which included $1,200 to the Navajo
Division of Social Services and $22,422 to Ben's mother for
various expenses.[10] Begay did not challenge the presentence
report's recommendation for restitution. At sentencing, he
and his counsel confirmed their lack of objections.

On appeal, Begay challenges the district court's
restitution award on two grounds. First, he contends the
district court's restitution award was plain error because he
was not convicted of a crime of violence. This argument fails
because, as we have explained, his second-degree murder
conviction does qualify as a "crime of violence." The MVRA
mandated the district court to order restitution. *See*
§ 3663A(a)(1), (c)(1)(A)(i).

Second, Begay contends the district court "made no
findings at all about the basis for its restitution award, and it
appears very likely the award exceeded the victim's losses."
18 U.S.C. § 3664 prescribes the procedure for calculating
restitution orders. It directs the district court to "order the

---

[10] According to the presentence report, the $22,422 represented the
following expenses: $1,700 for traditional ceremonies after Ben's death;
$80 for gasoline; $60 for food; $1,200 for funeral costs; $50 for Ben's
burial clothing; $100 for flowers; $200 for the reception hall; $19,000 for
a replacement truck; $707 for insurance for the new truck; and $525 for
insurance Ben's mother continued to pay on the van in which the crime
was committed.

probation officer to obtain . . . information sufficient for the court to exercise its discretion in fashioning a restitution order" and include such information in the presence report. § 3664(a). Federal Rule of Criminal Procedure 32 permits a court to "accept any undisputed portion of the presence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). However, the district court is limited to ordering a restitution award that reflects the victim's "actual losses." *Anderson*, 741 F.3d at 951.

Here, the district court properly relied on the presence report to determine the amount of restitution that Begay owed, but the court's order provides no explanation "to support its probable accuracy," *id.* at 951–52. Significantly, Ben's mother was awarded $19,000 for the cost of a new truck to replace the van in which Ben was shot. But § 3663A(b)(1)(B) limits a restitution award for "damage to or loss or destruction of property" to "the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned." The district court did not explain how or whether the $19,000 it awarded to compensate Ben's mother for the damaged van satisfied § 3663A.

"Remand is appropriate where the restitution award lacks an adequate evidentiary basis and the district court failed to explain its reasoning." *Anderson*, 741 F.3d at 952 (internal quotation marks and alterations omitted). Because the district court did not comply with § 3663A, we vacate its restitution award and remand for recalculation and for the district court to explain its reasoning.

VII

We affirm Begay's convictions for second-degree murder and for discharging a firearm during a crime of violence. We vacate the district court's order of mandatory restitution and remand for recalculation.

**AFFIRMED in part; VACATED and REMANDED in part.**

---

MURGUIA, Chief Judge, with whom Judge CLIFTON joins, concurring:

I agree with the majority opinion and therefore join it in full. I write separately only to amplify my own views of this case.

In *Borden v. United States*, 141 S. Ct. 1817 (2021), a plurality of the Supreme Court concluded that the phrase "against the person of another" demands that "the perpetrator direct his action at, or target, another individual." *Id.* at 1825 (plurality opinion).[1] In applying this standard to second-degree murder under 18 U.S.C. § 1111, two considerations strike me as particularly important. First, someone who commits second-degree murder "certainly must be aware" of the presence of "potential victims." *United States v. Báez-Martínez*, 950 F.3d 119, 127 (1st Cir. 2020). Second, someone who commits second-degree murder must be aware

---

[1] Because the parties treat the *Borden* plurality opinion as binding Supreme Court precedent, I assume for purposes of my analysis that it is.

that his conduct creates "a *very high* degree of risk of injury" to these potential victims. *United States v. Pineda-Doval*, 614 F.3d 1019, 1038 (9th Cir. 2010) (internal quotation marks omitted). In light of these considerations, I am persuaded that someone who commits second-degree murder necessarily directs his action at, or targets, another individual: if the perpetrator is aware of both the presence of potential victims and the very high risk of hitting them, then it is fair to say that the perpetrator has directed his actions against, or targeted, other individuals, even if he neither aims at nor consciously desires to harm them.

As our dissenting colleagues ably point out, this is not the only plausible reading of the *Borden* plurality's textual analysis. But I am persuaded that it is the more sensible reading, particularly once we factor context, purpose, and common sense into our analysis. *See Borden*, 141 S. Ct. at 1830–32 (context and purpose); *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (same); *Báez-Martínez*, 950 F.3d at 127 (common sense); *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) (same).

---

WARDLAW, Circuit Judge, dissenting in part:

I respectfully dissent from Parts V and VI of the majority opinion. I am pleased to concur in Parts I, II, and III of Judge Ikuta's excellent partial dissent, except as to a supposed need to remedy any "problem" with the legal conclusion that 18 U.S.C. § 1111(a) second-degree murder is not a categorical "crime of violence" under 18 U.S.C. § 924(c). Although it is true that *Borden v. United States*, 141 S. Ct. 1817 (2021), did not address whether "depraved heart"

second-degree murder is a categorical match with § 924(c)'s elements clause, its rationale compels the conclusion that it is not, as Judge Ikuta explains. But this is not a "crazy pills" conclusion, *see United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (Smith, J., dissenting) (quoting Ben Stiller (Director), Zoolander [Film], United States: Paramount Pictures (2001)); it derives directly from the Court's development of the categorical approach and its corresponding invalidation of vague residual clauses purporting to define violent crimes.

However, I disagree with Judge Ikuta's suggestion that the Court overrule its residual clause jurisprudence. Congress enacted a vague residual clause in the Armed Career Criminal Act definition of "violent felony," which the Court struck down in *Johnson v. United States*, 576 U.S. 591 (2015). Congress did the same in 18 U.S.C. § 16, defining "crimes of violence," which the Court struck down in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), affirming our court's opinion in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). Most recently, the Court struck down § 924(c)'s residual clause on the same void for vagueness grounds in *United States v. Davis*, 139 S. Ct. 2319 (2019).

In *Davis*, Justice Gorsuch explained why these residual clauses are so troubling: "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326. There, the government had to concede that courts had long interpreted § 924(c)'s residual clause to require courts to inquire whether in the ordinary case the conduct encompassed by the elements of the offense presented a substantial risk of force. *Id.* at 2326–27. The Court rejected the government's suggestion that it could save

the residual clause by "abandon[ing] the traditional categorical approach" and applying a case-specific approach. *Id.* at 2327. The Court concluded that the statute could not bear that interpretation, and down it went. And surely Congress could readily draft language that amended § 924(c) to include a firearm enhancement for second-degree murder, including extremely reckless conduct that results in the death of a human being.

For now, we are left with the elements clause. And a faithful application of the categorical approach[1] and Supreme Court precedent leads to the counter-intuitive conclusion that second-degree murder is not a crime of violence under § 924(c). And although the result here is counterintuitive, judges are not supposed to be guided by their intuition, but by the law.

As a practical matter, what does this mean? As the Court has noted, "[W]hen a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." *Id.* at 2336 (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)). Though I would affirm Begay's second-degree murder conviction, I would vacate the sentence on both counts of conviction and

---

[1] Some commentators have noted that despite the recent criticism of the categorical approach, it's been around for at least a century, and it's "here to stay," based on the Court's *Davis* opinion. *See* Amit Jain & Phillip Dane Warren, *An Ode to the Categorical Approach*, 67 UCLA L. Rev. Discourse 132, 151–52 (2019).

remand for resentencing,[2] as well as vacate the award of restitution.[3]

---

IKUTA, Circuit Judge, with whom Judge VANDYKE joins, dissenting in part:

Common sense dictates that second-degree murder under 18 U.S.C. § 1111(a) constitutes a crime of violence. Indeed, one judge recently argued that a contrary conclusion would make him feel that he was "taking crazy pills." *United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (N.R. Smith, J., dissenting) (citation omitted), reh'g en banc granted, opinion vacated, 15 F.4th 1254 (9th Cir. 2021). Unfortunately, we are not dealing with common sense here, but with the law, and with a conclusion that is "better explained by history than by logic." *United States v. Bruce*, 394 F.3d 1215, 1218 (9th Cir.2005) (discussing the exercise of criminal jurisdiction in Indian country). Therefore, I must

---

[2] Begay was sentenced to a total term of 324 months on both counts. The probation office had calculated a guideline sentencing range of 324–405 months for count one, the second-degree murder charge, and, of course, the consecutive mandatory 120 months for count two, the § 924(c) charge. The experienced district court judge considered the 18 U.S.C. § 3553 factors—especially the nature and circumstances of the crime, Begay's age and likelihood of rehabilitation, and the statutory purposes of sentencing—and concluded 27 years was the appropriate sentence. He therefore sentenced Begay to 204 months on count one, a variance of 120 months. Upon resentencing, this calculation might change.

[3] I agree that the award of restitution must be vacated because second-degree murder isn't a categorical "crime of violence" under 18 U.S.C. § 16's elements clause. 18 U.S.C. § 3663A(c)(1)(A)(i). SSI Dissent 38.

dissent from the majority's effort to reach a common sense result that is contrary to the Supreme Court's clear direction.

When it enacted 18 U.S.C. § 924(c), Congress made clear that second-degree murder qualified as a crime of violence.[1] The statute defined a "crime of violence" in two different ways. One definition—the "elements" clause—defined a crime of violence as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The Supreme Court later defined the use of force "against another" in a similarly worded statute as demanding that "the perpetrator direct his action at, or target, another individual." *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (plurality opinion).[2]

---

[1] For purposes of this appeal, the wording of the elements clause and residual clause in the definition of "violent felony" in the Armed Career Criminal Act (ACCA), *see* 18 U.S.C. § 924(e)(2)(B), is materially the same as the wording of the elements and residual clauses in 18 U.S.C. § 924(c)(3), *cf. United States v. Davis*, 139 S. Ct. 2319, 2325 (2019); *compare* 18 U.S.C. § 924(c)(3)(A) (defining "crime of violence" to include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another") *with* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" to include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). Therefore, *Borden* and other cases analyzing these clauses are equally applicable here.

[2] Because the *Borden* plurality opinion is a logical subset of Justice Thomas's concurrence, the plurality opinion is controlling. *See United States v. Davis*, 825 F.3d 1014, 1028 (9th Cir. 2016) (en banc) (citing *Marks v. United States*, 430 U.S. 188 (1977)). Justice Thomas concurred in the *Borden* plurality opinion on the ground that the phrase "use of physical force" has "a well-understood meaning applying only to

The second definition of a "crime of violence" under
§ 924(c)—the "residual" clause—defined a crime of violence
as an offense "that by its nature, involves a substantial risk
that physical force against the person or property of another
may be used in the course of committing the offense."
18 U.S.C. § 924(c)(3)(B).    Second-degree murder under
§ 1111(a) meets this definition because it concerns "killings
that, while not specifically intended or planned, [are] grievous
enough to be considered murder." *United States v. Pineda-
Doval*, 614 F.3d 1019, 1038 (9th Cir. 2010).    Obviously,
Congress meant for second-degree murder to qualify as a
crime of violence under the residual clause.

But the Supreme Court subsequently struck down the
residual clause as being unconstitutionally vague. *See United
States v. Davis*, 139 S. Ct. 2319, 2336 (2019).    And, as
explained below, second-degree murder under 18 U.S.C.
§ 1111(a) does not necessarily involve directed or targeted
conduct, and so is not a categorical match to the elements
clause, the only definition of "crime of violence" remaining
in § 924(c). As a result, although Congress meant for second-
degree murder to qualify as a crime of violence for purposes
of § 924(c), judicial interpretations of that statute have
blocked its original meaning. *See Borden*, 141 S. Ct. at 1835
(Thomas, J., concurring) (urging the Court to overrule its
opinion invalidating the residual clause in the Armed Career

---

intentional acts designed to cause harm." *Borden*, 141 S. Ct. at 1835
(Thomas, J., concurring) (quoting *Voisine v. United States*, 136 S. Ct.
2272, 2279, 2290 (2016) (Thomas, J., dissenting)).  The *Borden* plurality
opinion is narrower than this concurrence, because the plurality reasons
that the phrase "use of force" must be modified by the phrase "against
another" in order to require that the perpetrator consciously "direct his
action at, or target, another individual." *Borden*, 141 S. Ct. at 1825.

Criminal Act (ACCA), because a crime that would "satisfy the residual clause" by "involv[ing] conduct that presents a serious potential risk of physical injury to another" would not necessarily qualify as a crime of violence under the elements clause of the ACCA (citation omitted)).

Because we are bound by Supreme Court precedent, I must reluctantly dissent.

I

Randly Begay was convicted of second-degree murder under 18 U.S.C. § 1111(a), which provides that "[m]urder is the unlawful killing of a human being with malice aforethought."[3] The statute lists the types of murders that qualify as murder in the first degree, and then states that "[a]ny other murder is murder in the second degree." 18 U.S.C. § 1111(a). Begay was also convicted of discharging a firearm during a "crime of violence" under 18 U.S.C. § 924(c)(1)(A)(iii). The § 924(c) conviction relied on the conclusion that the § 1111(a) second-degree murder offense qualified as a crime of violence. But after *Davis* struck down the residual clause in § 924(c)(3)(B), the term "crime of violence" refers only to an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

---

[3] The term "malice aforethought" "covers four different kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony." *Pineda-Doval*, 614 F.3d at 1038.

In order to determine whether second-degree murder under § 1111(a) is a crime of violence under the elements clause, § 924(c)(3)(A), we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *Taylor* established a procedure for determining whether an offense of conviction (such as second-degree murder) qualifies as a generic federal offense (here, a "crime of violence" under the elements clause). *See id.* at 601–02. To make this determination, we must identify the elements of the generic federal offense and compare them with the elements of the statute defining the offense of conviction. If the elements of the statute defining the offense of conviction match the elements of the generic federal offense, then the offense of conviction is a categorical match to the generic federal offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the statute defining the offense of conviction has elements that do not match the elements of the generic federal offense, then it is not a categorical match. *See id.* In undertaking this analysis, we "ignore the facts of the case and simply line up the crime's elements alongside those of the generic offense and see if they match . . . in doing so, we must presume that the conviction rested upon nothing more than the least of the acts criminalized" by the statute defining the offense of conviction. *United States v. Studhorse*, 883 F.3d 1198, 1203 (9th Cir. 2018) (cleaned up).

The principles set out in *Borden* establish that § 1111(a) second-degree murder is not a categorical match to a generic "crime of violence" as defined by the elements clause of § 924(c). Recall that after *Davis*, the term "crime of violence" is defined in § 924(c) solely as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). *Borden* held that "[t]he phrase

'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." 141 S. Ct. at 1825. Said otherwise, to commit a crime of violence under the elements clause, a person must consciously use force against a particular target, just like a general "deploy[s] his forces against a rival regiment, or the chess master play[s] the Queen's Gambit against her opponent." *Id.* Based on this definition, *Borden* held that a person whose conduct "is not opposed to or directed at another . . . does not come within the elements clause." *Id.* at 1827.

For this reason, a person who is convicted of a crime involving reckless behavior does not engage in a crime of violence under the elements clause, because reckless behavior does not require the use of physical force against another. *See id.* That is, a person engages in reckless behavior when the person "consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Id.* at 1824 (internal quotation marks and citation omitted); *see also Voisine v. United States*, 136 S. Ct 2272, 2279 (2016) (defining reckless behavior as undertaking acts with awareness of their substantial risk of causing injury, even where the harm caused by reckless behavior "is the result of a deliberate decision to endanger another"). Such reckless conduct does not necessarily involve targeting: "[t]o the contrary, [the person's] fault is to pay insufficient attention to the potential application of force." *Borden*, 141 S. Ct. at 1827.

In light of *Borden*'s reasoning, second-degree murder under § 1111(a) likewise does not qualify as a crime of violence, because it does not necessarily include the element of targeting. A jury can convict a defendant of second-degree

murder under § 1111(a) without finding the defendant used force against a particular target. Section 1111(a) requires an unlawful killing with "malice aforethought." In modern criminal law, "malice aforethought" includes the mental state of "depraved heart," which is variously defined as "reckless indifference" or "extreme recklessness." *Pineda-Doval*, 614 F.3d at 1038, 1040. To convict a defendant of depraved heart murder, the government needs to show only that the defendant engaged in conduct (that resulted in the death of a human being) with the mental state of depraved heart or reckless indifference. The government would not need to prove that the defendant targeted the murder victim; it is enough if the defendant's conduct created a "*very high* degree of risk" of injury to other persons and the defendant had "an awareness of [that] extreme risk," exhibiting "an extreme indifference to the value of human life." *Id.* at 1038 (citation omitted). Said otherwise, a depraved heart murder "may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm." *See id.* (cleaned up). Under the natural meaning of these words, this conduct is not directed "against another" for purposes of the elements clause. *See Borden*, 141 S. Ct. at 1825. Because depraved heart murder does not require the conscious targeting of a victim that is necessary to establish the element of "against another," *id.* at 1824, it does not matter that depraved heart murder requires a more extreme indifference to the value of human life, *see Pineda-*

*Doval*, 614 F.3d at 1039, than does recklessness, *see Borden*, 141 S. Ct. at 1825.**[4]**

*Borden* did not directly address the question of whether depraved heart murder falls within the elements clause, because that issue was not before the Court. *See id.* at 1825 n.4 ("Some States recognize mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge. We have no occasion to address whether offenses with those mental states fall within the elements clause."). But *Borden*'s reasoning makes clear that an offense which does not require proof that the perpetrator "direct[ed] his action at, or target[ed], another individual" does not fall within the elements clause, because such an offense does not involve the use of force "against another." *Id.* at 1825. Because the offense of depraved heart murder under § 1111(a) does not require proof of conduct directed "against another," we must hold that it criminalizes conduct outside the scope of the elements clause.

## II

Despite this apparent mismatch between depraved heart murder and the elements clause, depraved heart murder under § 1111(a) could nevertheless qualify as a crime of violence if, as a practical matter, defendants are charged under that section only for extremely reckless conduct that is directed at, or targets, another individual. After all, a criminal statute

---

**[4]** Contrary to the majority's claim, the dissent does not argue that second-degree murder under § 1111(a) "may be conducted with a mens rea of recklessness." Majority at 21. The majority provides no citation to the dissent to support this claim—nor could it, because the dissent contains no such argument.

"creates a crime outside the generic definition of a listed crime in a federal statute" only if there is "a realistic probability, not a theoretical possibility," that the government would apply the criminal statute "to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Thus, to prove that the crime of conviction has been applied to conduct beyond the conduct criminalized in the generic federal offense, a defendant must point to cases where courts "in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*

Begay has made that showing here. A review of federal and state cases upholding convictions for second-degree depraved heart murder, whether under § 1111(a) or under state laws, shows that the crime encompasses conduct that does not involve the conscious use of force targeting another. For instance, our sister circuits have upheld the application of § 1111(a) to cases involving drunk driving, even though the defendants' conduct in those cases did not involve the use of force in opposition to or targeted against another. Thus, the Fourth Circuit sustained the § 1111(a) second-degree depraved heart murder conviction of a drunk driver who was speeding and driving the wrong way on a freeway when he struck and killed another driver. *See United States v. Fleming*, 739 F.2d 945 (4th Cir. 1984). The court reasoned that to show malice aforethought, "the government need only have proved that defendant intended to operate his car in the manner in which he did with a heart that was without regard for the life and safety of others." *Id.* at 948; *see also United States v. Merritt*, 961 F.3d 1105, 1118 (5th Cir. 2020) (upholding a conviction for depraved heart murder under § 1111(a) resulting from drunk driving in the wrong lane when defendant "was aware his drunk driving posed a serious

risk of death or serious bodily harm to others"); *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995) (upholding a second-degree depraved heart murder conviction under § 1111 for striking and killing another driver while driving under the influence of alcohol and prescription drugs, despite the defendant's testimony "that he did not intend to hurt anybody"). We have likewise recognized that second-degree depraved heart murder includes conduct that is not targeted, such as "shooting a gun into a room that the defendant knows to be occupied" or "driving a car at very high speeds along a crowded main street." *Pineda-Doval*, 614 F.3d at 1039.

State courts have likewise upheld depraved heart murder convictions for crimes not involving the targeted use of force against another (though states may use different terminology, such as "reckless second-degree murder"). We may consider these cases because "[m]alice aforethought is a concept that originated with the common law and is used in 18 U.S.C. § 1111(a) in its common law sense," and therefore we "do not confine our consideration of the precedents to decisions of federal courts interpreting the federal statute, but rather consider other sources which may shed light on the issues of this case." *Fleming*, 739 F.2d at 947 n.2; *see also Pineda-Doval*, 614 F.3d at 1039 (relying on collections of state cases to define second-degree murder). These state cases demonstrate that the common law has long recognized that a person can commit a depraved heart murder when the person's extremely reckless behavior results in a victim's death, regardless whether the person used force against any individual. For instance, a defendant whose dogs escaped and mauled a child to death could be convicted of depraved heart murder where the defendant's recklessness, in ignoring her dogs' aggressiveness and failing to properly train or secure her dogs, showed "an extreme indifference to the value

of human life." *State v. Davidson*, 987 P.2d 335, 344 (Kan. 1999). In that case, the state was "not required to prove that defendant knew her dogs would attack and kill someone." *Id.* In another case, defendants were convicted of second-degree murder when a defendant sped down the wrong lane of a public highway during a race in which his co-defendants participated, resulting in the death of an individual traveling in the correct lane. *See Stallard v. State*, 348 S.W.2d 489, 490 (Tenn. 1961). The court noted that the defendants' conduct implied "such a high degree of conscious and willful recklessness as to amount to that malignity of heart constituting malice," and held that this recklessness justified convicting the defendants who were not behind the wheel of the crashing car as aiders and abettors, as well. *See id.* (citation omitted). Finally, a defendant who set a couch on fire in an abandoned building was properly charged with depraved heart murder when the ensuing fire contributed to the death of a fireman responding to the scene. *See People v. Arzon*, 401 N.Y.S.2d 156, 157, 159 (N.Y. Sup. Ct. 1978). Defendant's actions demonstrated "a wanton and depraved indifference to human life," given that fire is "non-selective and uncontrollable in its destructiveness." *Id.* at 158.

The majority attempts to brush off such cases, at least in the drunk driving context, on the ground that a crime of violence under § 924(c) "necessarily arises only in situations where a firearm is involved," Majority at 28, and therefore it "will be the exceptionally rare drunk driving case that involves second-degree murder and the discharge of a firearm," Majority at 28. In other words, the majority reasons that because § 924(c) applies to firearm offenses, a defendant charged with a violation of § 924(c) would probably be engaged in violent conduct with a firearm, rather than in drunk driving.

But even if we recognize the "absurdity" of applying the categorical approach to a § 924(c) conviction involving violent offenses with firearms, we must likewise recognize that "[o]ur precedent requires application of that approach." *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017); *cf.* Majority at 28 n.9. This means that we must ignore the factual context of any particular case. *See Descamps v. United States*, 570 U.S. 254, 265 (2013). Even assuming that as a factual matter, a defendant like Begay who is charged with both second-degree murder under § 1111(a) and discharging a firearm during a crime of violence under § 924(c) will virtually always have used a firearm to commit the § 1111(a) offense, the categorical approach prohibits consideration of this factual context. *See id.* That is, for the purposes of the categorical approach, all that matters is whether the "crime of conviction . . . [does or] does not correspond to the relevant generic offense." *Id.* "If any—even the least culpable—of the acts criminalized" by § 1111(a) as second-degree murder do not entail the targeted or oppositional conduct required to qualify as a crime of violence under the elements clause, then "the statute of conviction does not categorically match the federal standard." *Borden*, 141 S. Ct. at 1822. Thus, the majority's mindfulness that "§ 924(c) necessarily arises only in situations where a firearm is involved," Majority at 28, is irrelevant to the analysis of this issue.

III

In holding otherwise, the majority merely assumes the conclusion that "a conviction for second-degree murder pursuant to § 1111(a) constitutes a crime of violence" because "a defendant who acts with the requisite mens rea to commit second-degree murder *necessarily* employs force 'against the person or property of another.'" Majority

at 22–23 (emphasis added).  The majority acknowledges that depraved heart murder does not require "that a defendant target his conduct at any particular individual," but relies on *Báez-Martinez* for the proposition that depraved heart murder is "necessarily oppositional because a defendant 'certainly must be aware that there are potential victims before he can act with indifference toward them.'"  Majority at 26 (quoting *United States v. Báez-Martinez*, 950 F.3d 119, 127 (1st Cir. 2020)).  The concurrence likewise relies on a tautology, arguing that depraved heart murder, which requires only that "the perpetrator is aware of both the presence of potential victims and the very high risk" of harming them, C.J. Murguia Concurrence at 33, inherently involves directed or targeted actions against such potential victims, even if the perpetrator "neither aims at nor consciously desires to harm them," C.J. Murguia Concurrence at 33.

But this circular reasoning is not persuasive.  First, the majority's reliance on *Báez-Martinez* is misplaced, because it was decided before *Borden* limited "crimes of violence" to offenses involving oppositional or targeted conduct (and before *Borden* made clear that reckless offenses did not so qualify).  If anything, *Báez-Martinez* is contrary to *Borden*, which established that a person's awareness and conscious disregard of a substantial and unjustifiable risk to another does not mean the person is engaged in the "use of physical force against the person of another," because that element "demands that the perpetrator direct his action at, or target, another individual." *Borden*, 141 S. Ct. at 1825.  Contrary to the majority and concurrence, a person may take actions with extreme disregard for human life without any such targeting.  As discussed, a drunk driver who speeds the wrong way down a highway can be convicted of second-degree murder under § 1111(a) because the driver's conduct involves extreme

disregard for human life. But under the natural meaning of words, such drunk driving does not constitute action directed against, or targeting, another individual, or the conscious use of force against a particular target. *See id.* at 1825. Likewise, raising aggressive dogs and failing to control them may evince an extreme disregard for human life, *see Davidson*, 987 P.2d at 344, but such conduct is not the same as targeting or directing force against another person.

The majority and concurrence attempt to support their conclusion that depraved heart murder under § 1111(a) is a crime of violence by relying on the "context and purpose" of § 924(c). *See* Majority at 26 (citation omitted); *see also* C.J. Murguia Concurrence at 33. The gist of this argument seems to be that offenses charged as second-degree murder "are among the most culpable of crimes," Majority at 27, and therefore a "consideration of context reinforces the conclusion that second-degree murder qualifies as a crime of violence pursuant to the elements clause of § 924(c)(3)," Majority at 29. Again, these statements merely assume the conclusion and do not adequately explain why second-degree depraved heart murder under § 1111(a) is necessarily targeted against another. If anything, the context of § 924(c) cuts in the opposite direction. Congress divided the definition of "crime of violence" into two prongs, and the second prong—the residual clause—was clearly meant to capture offenses such as depraved heart murder, which can pose an unreasonable risk of harm without being targeted against another person. This raises the strong inference that the first prong of § 924(c), the elements clause—which after *Davis* is the *only* prong remaining—was not meant to include that sort of offense.

\*\*\*

There is no need to take crazy pills to disagree with the majority. Congress meant for second-degree murder to qualify as a crime of violence under the residual clause. The Supreme Court determined that the residual clause was void for vagueness, *see Davis*, 139 S. Ct. at 2336, and defined the elements clause as including only conduct that targets or is directed at another individual, *see Borden*, 141 S. Ct. at 1827. Because second-degree murder can be committed with extreme recklessness, and so does not necessarily involve a directed or targeted use of force against the victim, and because the elements clause requires such a directed or targeted use of force under *Borden*, second-degree murder is not a categorical match and so does not qualify as a crime of violence under the elements clause.

The "crazy pills" conclusion that second-degree murder is not a crime of violence could be eliminated if Congress were to amend § 924(c) to include a residual clause that could withstand a constitutional vagueness challenge, or if the Supreme Court took Justice Thomas's advice to overrule its determination that the residual clause is void for vagueness. It is not our job to disregard Supreme Court precedent in order to fix this problem. I therefore dissent from the majority's holding that second-degree murder is a crime of violence under the elements clause.[5]

---

[5] Thus, for the reasons explained in Judge Wardlaw's partial dissent, *see* J. Wardlaw Dissent at 35–36, I would vacate Begay's entire sentence and remand for resentencing. *See Davis*, 139 S. Ct. at 2336 ("As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any

remaining counts' if such an increase is warranted." (citation omitted)). I would also reverse the restitution award because second-degree murder is not a crime of violence under the elements clause. *See Begay*, 934 F.3d at 1041; *cf.* Majority at 31. However, I do not dissent from the majority's holding that the district court did not plainly err in its instructions to the jury. Majority at 14.