**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Mitchell PAUL, Defendant–
Appellant.**

**No. 93–10697.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1994.

Decided Oct. 3, 1994.

Robert J. McWhirter, Asst. Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Paul K. Charlton, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: NORRIS, THOMPSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Michael Mitchell Paul was convicted of voluntary manslaughter in violation of 18 U.S.C. § 1112. The district court instructed the jury using the Ninth Circuit model jury instructions for voluntary and involuntary manslaughter. We hold that the district court's instructions constituted plain error because they failed to adequately distinguish the different mental state requirements of voluntary and involuntary manslaughter. Therefore, we reverse Paul's conviction.

## BACKGROUND FACTS

On July 18, 1992, Darlene Paul died during a fight with her husband Michael Paul at their home on the Gila River Indian Reservation. Paul claims his wife came home drunk around one o'clock in the morning. According to Paul, Darlene wouldn't tell him where their 2½ year old son, Joshua, was. An argu-

ment ensued during which the two traded personal insults and accusations leading to violence. During the fight, Paul strangled Darlene and banged her head against the ground. Believing he killed her, Paul took a shower to wash blood off himself and changed into new clothes. He then went to his mother's house, told her he thought he killed Darlene, and instructed her to call the police to come pick him up.

Officer Benedict Romo of the Bureau of Indian Affairs arrived at Paul's mother's house. Paul told Officer Romo that he had an argument with his wife and beat her. He stated: "I think I killed her." Officer Romo responded that they would go back to Paul's home "to check on his wife." Before entering the police car, Officer Romo placed Paul in handcuffs. Paul then gave Officer Romo directions to his house. When they arrived, Paul told Officer Romo that the south door of the house would be open. Officer Romo entered the home and found a female body on the floor. He checked for vital signs and found none.

On May 12, 1993, Paul was indicted for second-degree murder pursuant to 18 U.S.C. §§ 1111 and 1153. Paul filed a motion to suppress evidence found in his home on grounds that the search was conducted without a warrant or his consent. After a suppression hearing, the district court denied the motion.

At trial, the district court originally instructed the jury on the difference between the lesser-included offenses of voluntary and involuntary manslaughter as follows:

### Voluntary Manslaughter

... [T]he government must prove each of the following beyond a reasonable doubt:

*First,* the defendant killed Darlene Paul;

*Second,* the defendant acted in the heat of passion;

*Third,* heat of passion was caused by adequate provocation.

Heat of passion may be provoked by fear, rage, anger, or terror. Provocation, in order to be adequate, must be such as might naturally cause a reasonable person in the passion of the moment to lose self-control and act on impulse and without reflection....

### Involuntary Manslaughter

... [T]he government must prove each of the following elements beyond a reasonable doubt:

*First,* Darlene Paul was killed as a result of an act by the defendant;

*Second,* in the circumstances existing at the time, the defendant's act either was by its nature dangerous to human life or was done with reckless disregard for human life;

*Third,* the defendant either knew that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others....

These instructions closely tracked the Ninth Circuit model jury instructions for voluntary and involuntary manslaughter. *See Manual of Model Criminal Jury Instructions for the Ninth Circuit* §§ 8.24C & 8.24D (1992).

During the course of deliberations, the jury sent the following question to the court: "Legally if person A dies as a result of person B's actions, can person B kill person A?" [8/26/93 Rep.Tr. at 314.] The court responded, without objection from counsel,

The answer to your question is yes; however, whether or not the killing is unlawful requires a determination of the facts surrounding the death. The law in the instructions should then be applied to the facts which the jury finds to exist in order for the jury to arrive at its verdict in the case.

[*Id.*] Deliberations continued until the jury sent the court another note stating: "We cannot reach an agreement. Where do we go from here?" [*Id.* at 310.] In response, the court gave the jury an *Allen* charge, instructing them to continue their deliberations. *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

Approximately an hour and a half later, the jury sent another question to the court: "Could we have some explanation or clarification on the difference between voluntary

manslaughter, the first element, 'the defendant killed Darlene Paul,' and involuntary manslaughter, the first element, 'Darlene Paul was killed as a result of an act by the defendant?' "

[*Id.* at 322.] The court, over defense counsel's objection, instructed:

In response to your question, you are instructed that the first element of voluntary manslaughter and the first element of involuntary manslaughter are essentially the same. The distinction between the two offenses lies in the second and third element of each offense. In resolving the matters, you are referred to all of the court's instructions and they are to be considered as a whole.

[*Id.* at 322–23.] Fifteen minutes later, the jury found Paul guilty of the lesser-included offense of voluntary manslaughter.

On November 1, 1993, the district court sentenced Paul to 41 months in prison.

## DISCUSSION

▇▇▇ Under federal law, manslaughter is defined as follows:

Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

18 U.S.C. § 1112(a). Manslaughter is distinguished from murder "by the *absence* of malice, one of murder's essential elements." *United States v. Quintero,* 21 F.3d 885, 889 (9th Cir.1994); *see* 18 U.S.C. § 1111(a). To establish malice or malice aforethought in a homicide prosecution, the government must prove that the defendant killed intentionally or recklessly with extreme disregard for human life. *See United States v. Lesina,* 833 F.2d 156, 159 (9th Cir.1987); *see also Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 8.24B (1992).

▇▇▇ If the defendant killed with the mental state required for murder (intent to kill or recklessness with extreme disregard for human life), but the killing occurred in the "heat of passion" caused by adequate provocation, then the defendant is guilty of voluntary manslaughter. *See Quintero,* 21 F.3d at 891; *United States v. Browner,* 889 F.2d 549, 552 (5th Cir.1989).[1] The finding of heat of passion and adequate provocation negates the malice that would otherwise attach. *See Browner,* 889 F.2d at 552. By contrast, "the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to meet the traditional malice requirements." *Id.* at 553. Thus, involuntary manslaughter is an unintentional killing that "evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice." *Lesina,* 833 F.2d at 159; *see also United States v. Skinner,* 667 F.2d 1306, 1309–10 (9th Cir.1982) ("Involuntary manslaughter is an unintentional homicide."), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

On appeal, Paul contends the district court erred by failing to instruct the jury on the different mental state requirements of voluntary and involuntary manslaughter. Unfortunately, Paul did not clearly raise this issue before the district court. For example, Paul never asked the court to instruct the jury

---

1. In *Quintero,* the court described "intent without malice" as "the defining characteristic of voluntary manslaughter." 21 F.3d at 890. Any suggestion in *Quintero* that intent to kill is a *necessary* element of voluntary manslaughter is dicta. While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed unintentionally but recklessly with extreme disregard for human life may have acted in the heat of passion with adequate provocation. *See Browner,* 889 F.2d at 552; Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 7.10, at 653 (2d ed. 1986). In such a case, the defendant would be guilty of voluntary manslaughter, not murder. Otherwise, a defendant who killed in the heat of passion with intent to kill would only be liable for voluntary manslaughter, whereas a defendant who killed in the heat of passion *without* intent to kill, but acted recklessly with extreme disregard for human life (*e.g.,* shoots at victim to frighten, not kill), would still be liable for murder.

regarding the different mental state requirements. Paul, however, did object to the district court's instruction, in response to the jury's question, that the first element of voluntary manslaughter, "the defendant killed Darlene Paul," and the first element of involuntary manslaughter, "Darlene Paul was killed as a result of an act by the defendant," were essentially the same. Paul's counsel stated:

> [T]here is a distinction between the two, I think. In one case, the defendant did something that resulted in the death. The other shows, I think, a step more of volition on the part of the defendant. I think that is the difference between the two. And that's why they are articulated different.

[ER at 34.] We need not resolve whether Paul properly preserved the issue for appeal because we conclude that it was plain error for the district court to give the Ninth Circuit model jury instructions because those instructions fail to distinguish the different mental state requirements of voluntary and involuntary manslaughter.

■ "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Dischner*, 974 F.2d 1502, 1514 (9th Cir.1992) (internal quotations omitted), *cert. denied*, — U.S. —, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993); *see also* Fed. R.Crim.P. 52(b). In *United States v. Olano*, — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court defined the limitations on our authority to correct plain error under Rule 52(b). First, there must be an actual error, not merely a waiver of rights. *Id.* at —, 113 S.Ct. at 1777. Second, the error must be plain—"clear" or "obvious" under current law. *Id.* Third, the plain error must "affect substantial rights," which typically means that the error must be prejudicial. *Id.* at —, 113 S.Ct. at 1777–78. Finally, even if the error is plain and affects substantial rights, we have authority to order correction, but are not required to do so. *Id.* at —, 113 S.Ct. at 1778. We may only employ our discretion to correct such an error in cases "in which a miscarriage of justice would otherwise result." *Id.* at —, 113 S.Ct. at 1779 (internal quotations omit-

ted). In other words, the error must "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

■ The district court's failure to instruct the jury on the different mental state requirements of voluntary and involuntary manslaughter constituted plain error because it was clear and obvious under the case law that such an instruction was required. Under the Ninth Circuit model voluntary manslaughter instruction used in this case, the jury was only instructed to determine if (1) Paul killed Darlene; (2) Paul acted in the heat of passion; and (3) the heat of passion was caused by adequate provocation. The jury should also have been instructed to determine whether Paul intended to kill Darlene or acted recklessly with extreme disregard for human life. By failing to instruct the jury on this mental state requirement, the district court created the possibility that Paul might be convicted of voluntary manslaughter even if he did not intend to kill Darlene nor acted recklessly with extreme disregard for human life. Similarly, the involuntary manslaughter instruction was erroneous because it failed to explain that involuntary manslaughter is an unintentional killing.

■ Paul has demonstrated that these errors affected substantial rights because they were prejudicial. Paul's defense at trial was that he did not intend to kill his wife, Darlene. Paul contended Darlene bled to death from a wound caused by her accidental fall to the floor during their fight. The failure to instruct the jury on the mental state requirements created a substantial risk that Paul was convicted of voluntary manslaughter, even though the jury may have believed the killing was neither intentional nor extremely reckless. Based on our review of the record, especially the jury's evident confusion over the meaning of the manslaughter instructions, we hold that the error was prejudicial, affecting substantial rights.

■ We exercise our discretion to correct this error because we believe a miscarriage of justice would otherwise result. At trial, Paul's counsel vigorously denied Paul intend-

ed to kill his wife. Evidence was presented in support of the defense's accidental death theory. The jury instructions improperly deprived Paul of his right to have a jury determine an essential element of voluntary manslaughter—mental state (*i.e.*, Did Paul kill intentionally or recklessly with extreme disregard for human life?). Given this court's participation and oversight in the drafting of the model jury instructions which we now find infirm, we believe our failure to correct the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings."

Therefore, we hold that the district court's failure to properly instruct the jury about the mental state requirements for voluntary and involuntary manslaughter was plain error. Because the district court's instructions closely tracked sections 8.24C and 8.24D of the *Manual of Model Criminal Jury Instructions for the Ninth Circuit,* the model instructions should not be used unless they are modified in accordance with our opinion.

Paul may only be retried on the charges of voluntary and involuntary manslaughter because the jury's guilty verdict on the lesser-included offense of manslaughter constituted an "implicit acquittal" on the charge of second degree murder. *See Green v. United States,* 355 U.S. 184, 190–91, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); *United States v. Gooday,* 714 F.2d 80, 82–83 (9th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984).

## CONCLUSION

Paul's conviction for voluntary manslaughter is REVERSED.[2]

---

2. Paul's remaining contentions are either mooted by our invalidation of his conviction or without merit. In particular, we have examined the record and conclude that the district court did not err in finding that Paul consented to the warrantless search of his home. *See United States v. Rosi,* 27 F.3d 409, 412 (9th Cir.1994) ("Under certain narrow circumstances ... 'courts will infer consent from the cooperative attitude of a defendant.' ").