**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 31 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10372 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00060-MMD-WGC-1 |
| v. | |
| STEVEN BRYAN, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted July 18, 2023
San Francisco, California

Before: WARDLAW and M. SMITH, Circuit Judges, and RAYES,[**] District Judge.

Steven Bryan appeals his voluntary manslaughter conviction and sentence.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. Because the parties are

familiar with the facts, we do not recount them here, except as necessary to provide

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

context to our ruling.

1. The district court did not abuse its discretion or violate Bryan's Sixth Amendment rights by precluding Bryan from impeaching L.M. with her arrest for driving under the influence (DUI). *See United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013) (reviewing exclusion of evidence for abuse of discretion and whether a constitutional violation occurred *de novo*). Bryan sought to introduce this evidence to suggest L.M. might have been incentivized to offer testimony favorable to the Government's case in exchange for assistance securing leniency from Nevadan prosecuting authorities. Though the Sixth Amendment guarantees criminal defendants the right to impeach witnesses by revealing possible biases, *see Gibbs v. Covello*, 996 F.3d 596, 601 (9th Cir. 2021), trial judges may impose reasonable limits on such cross-examination to, among other things, avoid wasting time and confusing the jury with irrelevant or negligibly probative testimony, *see Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). To determine whether a limitation on cross-examination violated a defendant's Sixth Amendment rights, we first assess whether the excluded evidence is relevant and, if it is, we ask whether other legitimate interests outweighed the defendant's interest in presenting the evidence and whether the exclusion of the evidence left the jury with sufficient information upon which to assess the witness' credibility. *United States v. James*, 139 F.3d 709, 713 (9th Cir. 1998).

Bryan's argument fails at the first step because L.M.'s DUI arrest was not relevant or probative of potential bias, given there is no evidence the Government promised L.M. anything in exchange for her testimony, and L.M. provided her account to the FBI over a year before her arrest. A jury could not reasonably suspect bias based on L.M.'s unrelated DUI arrest by a non-federal prosecuting authority that occurred over a year after she told her story to investigators. *See United States v. Beardslee*, 197 F.3d 378, 383 n.1 (9th Cir. 1999) (affirming the district court's refusal to permit cross-examination into a witness' probationary status where there was no evidence suggesting the witness' probationary status rendered him particularly subject to undue pressure from the government).

2. Assuming, *arguendo*, that the district court erred by admitting a Facebook message Bryan sent to his daughter asking if she thought he was capable of extreme violence, the error was harmless because "it is more probable than not that the error did not materially affect the verdict." *United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010). The Facebook message came up three times during trial: once during Bryan's cross-examination, once during his re-direct, and once during the Government's closing argument. Though the Government used the Facebook message as a rhetorical device during its closing argument, it did not make the Facebook message a centerpiece of its case, and ample evidence supports the jury's verdict.

3. The district court did not abuse its discretion by overruling Bryan's objection that the Government had misstated evidence during its closing argument. "[T]he prosecution is allowed to argue reasonable inferences based on the evidence," *United States. v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997), as the Government did here. The Government accurately summarized the firearms expert's testimony that, pulling the trigger at his fastest speed, he could fire an AR-15 21 times in four seconds. The Government then argued the jury could infer someone who is not a firearms expert could do so in under ten seconds. This inference is reasonable, especially considering Bryan fired the shots around 3:00am after consuming five alcoholic drinks. The district court did not err by permitting the Government to argue reasonable inferences from this evidence.

4. The district court's self-defense instruction was not plainly erroneous. *See United States v. Nobari*, 574 F.3d 1065, 1080 (9th Cir. 2009) (reviewing jury instructions for plain error absent a timely objection below). The district court instructed the jury on self-defense and gave a general unanimity instruction. Ordinarily, a general unanimity instruction suffices. *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999). A specific unanimity instruction is necessary only when "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." *United States v. Chen Chiang Liu*, 631 F.3d 993, 1000 (9th Cir.

4

2011).  Nothing in the record suggests such confusion.  The one-count indictment was based on a single event and was not broad, ambiguous, or factually complex. Further, the jury was given clear self-defense and general unanimity instructions, and when polled after the verdict, each juror affirmed the verdict was his or her true verdict.

5. The district court's lesser-included offense instructions were not plainly erroneous.  First- and second-degree murder both require malice aforethought; they differ in that first-degree murder requires the killing be "willful, deliberate, malicious, and premeditated," or committed while perpetrating certain felony offenses.  18 U.S.C. § 1111(a).  An unpremeditated killing with malice aforethought is second-degree murder.  *Id.*; *see United States v. Pineda-Doval*, 614 F.3d 1019, 1037 (9th Cir. 2010).  "To kill with malice aforethought means to kill either deliberately or recklessly with extreme disregard for human life."  *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (emphasis removed).  The district court's first- and second-degree murder instructions correctly describe the *mens rea* for both offenses.

"If the defendant killed with the mental state required for murder (intent to kill or recklessness with extreme disregard for human life), but the killing occurred in the 'heat of passion' caused by adequate provocation, then the defendant is guilty of voluntary manslaughter."  *United States v. Paul*, 37 F.3d 496, 499 (9th

Cir. 1994). This is so "because a heat of passion and adequate provocation finding 'negates the malice that would otherwise attach[.]'" *Begay*, 33 F.4th at 1088 (quoting *Paul*, 37 F.3d at 499). The district court's voluntary manslaughter instruction reflected these principles by describing a *mens rea* consistent with second-degree murder, except that the killing took place during a sudden quarrel or in heat of passion caused by adequate provocation.

Finally, the difference between voluntary and involuntary manslaughter is the manner in which malice is negated. "[T]he absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to meet the traditional malice requirements." *Paul*, 37 F.3d at 499 (quoting *United States v. Browner*, 889 F.2d 549, 553 (5th Cir. 1989)). "Thus, involuntary manslaughter is an unintentional killing that 'evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice.'" *Id.* (quoting *United States. v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987)). The district court correctly instructed that involuntary manslaughter is an unlawful killing occurring without malice aforethought or intent to kill because it results from "gross negligence, defined as wanton or reckless disregard for human life."

6. Because Bryan has identified, at most, a single harmless evidentiary error (the admission of the Facebook message), his argument that multiple trial errors

cumulated to deprive him of due process, *see United States v. Preston*, 873 F.3d 829, 835 (9th Cir. 2017), necessarily fails.

7. Sufficient evidence supports Bryan's voluntary manslaughter conviction. *See United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005) (reviewing *de novo* the denial of a motion for acquittal based on insufficient evidence). "The evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009) (quoting *United States v. Dearing*, 504 F.3d 897, 900 (9th Cir. 2007)). Bryan argues no rational juror could have found the Government met its burden to rebut self-defense beyond a reasonable doubt. But Bryan's self-defense claim was, at minimum, contradicted by L.M.'s eyewitness testimony that, after two heated arguments with Kyle about money, Bryan yelled "You're dead," returned to Kyle's bedroom carrying an assault rifle, and fatally shot him. Though Bryan contends L.M.'s testimony was unreliable, witness credibility "is generally beyond the scope of review" in a sufficiency-of-the-evidence challenge. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

8. The district court did not abuse its discretion at sentencing by refusing to vary downward based on Bryan's policy disagreements with the Sentencing Guidelines. *See United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2011)

7

(application of the Sentencing Guidelines is reviewed for an abuse of discretion).

Bryan argues the district court abused its discretion by failing to appreciate it had discretion to vary from the Sentencing Guidelines under *Kimbrough v. United States*, 552 U.S. 85 (2007). We disagree. The district court read and considered the parties' sentencing memoranda, in which Bryan made his policy arguments, and it clearly understood it had discretion to vary from the Sentencing Guidelines because it expressly found mitigating factors supported a sentence on the low end of the guidelines range "but they do not warrant a variance." The district court adequately explained its reasons for the sentence, and nothing in the record shows the district court failed to appreciate it had discretion to vary from the Sentencing Guidelines if it deemed such variance appropriate. *See United States v. Ayala-Nicanor*, 659 F.3d 744, 752 (9th Cir. 2011) (finding no sentencing error where the record demonstrated the district court recognized its discretion to vary from the Sentencing Guidelines).

**AFFIRMED.**