**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-15104 |
| *Plaintiff-Appellee*, | D.C. Nos. 3:16-cv-00748-RCJ |
| v. | 3:12-cr-00004-RCJ-VPC-1 |
| DANIEL JAMES DRAPER, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted December 5, 2022
San Francisco, California

Filed October 17, 2023

Before: Jacqueline H. Nguyen and Jennifer Sung, Circuit
Judges, and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Nguyen

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the
District of Nebraska, sitting by designation.

## SUMMARY[**]

### 28 U.S.C. § 2255

The panel affirmed the district court's denial of Daniel Draper's motion under 28 U.S.C. § 2255 in which he argued that his conviction under 18 U.S.C. § 924(c) for using a firearm during a crime of violence and its mandatory consecutive sentence should be vacated because his predicate crime, voluntary manslaughter, does not qualify as a crime of violence.

Applying *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc) (which held that depraved heart murder necessarily entails the force required to qualify as a crime of violence under § 924(c)'s elements clause, 18 U.S.C. § 924(c)(3)(A)), the panel held that voluntary manslaughter is a crime of violence under § 924(c). The panel wrote that for purposes of § 924(c), voluntary manslaughter has the same mental state as murder—intent to commit a violent act against another or recklessness with extreme indifference to human life. Like murder, voluntary manslaughter requires at least an "extreme and necessarily oppositional" state of mind. The panel held that the district court therefore properly denied Draper's § 2255 motion.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Wendi L. Overmyer (argued) and Amy B. Cleary, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Federal Public Defender's Office, Las Vegas, Nevada; for Defendant-Appellant.

Adam M. Flake (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Jason M. Frierson, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; Robert L. Ellman and William R. Reed, Assistant United States Attorneys, United States Attorney's Office, Reno, Nevada; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Daniel Draper shot and killed Linford Dick. A jury convicted him of voluntary manslaughter, a violation of 18 U.S.C. § 1112, and using a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c). Draper appeals the district court's denial of his motion under 28 U.S.C. § 2255. He argues that his § 924(c) conviction and its mandatory 15-year consecutive sentence should be vacated because his predicate crime, voluntary manslaughter, does not qualify as a crime of violence.

Whether homicide is inherently a violent crime might seem like a straightforward question, but the answer depends on both the definition of violent crime and the type of homicide at issue. The statute we consider here, 18 U.S.C.

§ 924(c)(1)(A), enhances the sentence of a person who uses or possesses a firearm while committing a crime of violence. The statute defines "crime of violence" to include any federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). This definition—in particular, the phrase "against . . . another"—requires a mens rea akin to knowledge or intent. *See Borden v. United States*, 141 S. Ct. 1817, 1828 (2021). It includes murder, which must be committed with at least extreme recklessness, but not homicide involving only ordinary recklessness. *See United States v. Begay*, 33 F.4th 1081, 1093–95 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 340 (2022).

We must decide whether § 924(c) applies to the crime of voluntary manslaughter, 18 U.S.C. § 1112(a). We hold that it does. In *Begay*, we determined that second degree murder satisfies § 924(c) because the least culpable act criminalized under 18 U.S.C. § 1111, depraved heart murder, entails the "use, attempted use, or threatened use of physical force against the person or property of another." *Begay*, 33 F.4th at 1091 (quoting 18 U.S.C. § 924(c)(3)(A)). Voluntary manslaughter, though lacking the element of malice, requires the same mental state. Courts deem voluntary manslaughter to be without malice only because the attendant circumstances—heat of passion with adequate provocation—make the offense less blameworthy. Depraved heart voluntary manslaughter entails the same extremely reckless violence as second degree murder.

Daniel Draper moved the district court for relief from his § 924(c) conviction. In denying relief, the district court correctly concluded that Draper's voluntary manslaughter conviction is a crime of violence. Therefore, we affirm.

## I.

Draper used a shotgun to kill Linford Dick within Battle Mountain Indian Colony, for which a jury convicted him of violating § 924(c). The jury found that the underlying crime of violence was voluntary manslaughter (rather than murder, as the prosecution had argued) and separately convicted him of that offense. The district court imposed consecutive sentences of 15 years for each crime. *See* 18 U.S.C. § 924(j)(2).

Shortly after we affirmed his conviction and sentence, *see United States v. Draper*, 599 F. App'x 671, 672 (9th Cir. 2015), Draper sought relief in a motion pursuant to 28 U.S.C. § 2255, raising claims not at issue here. The district court denied the motion.

In light of *Johnson v. United States*, 576 U.S. 591 (2015), we authorized Draper to file a second or successive § 2255 motion. He argued that his § 924(c) conviction should be vacated because part of the statute's definition of "crime of violence" is unconstitutionally vague under *Johnson* and the surviving part does not apply to voluntary manslaughter. The district court did not address Draper's constitutional argument because it disagreed with his statutory argument and denied relief on that basis. However, the court found the question "difficult" and granted a certificate of appealability.

We have jurisdiction over Draper's appeal under 28 U.S.C. § 2253. We review the district court's decision de novo. *See United States v. Fultz*, 923 F.3d 1192, 1194 (9th Cir. 2019).

## II.

Before turning to the merits, we first address a procedural issue. The government argues that Draper

procedurally defaulted his claim.  Draper maintains that the government forfeited its procedural default argument by failing to raise it in the district court and that, regardless, his claim is not subject to procedural default because it challenges the district court's subject matter jurisdiction.

A § 2255 motion, which collaterally attacks a federal inmate's conviction or sentence, seeks "an extraordinary remedy" and cannot substitute for an appeal.  *United States v. Pollard*, 20 F.4th 1252, 1255 (9th Cir. 2021) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)).  If a defendant fails to raise a claim on direct review, the claim is "procedurally defaulted," and the defendant may raise it via a § 2255 motion only if he can demonstrate either cause and actual prejudice or his actual innocence.  *Bousley*, 523 U.S. at 622.

Because "procedural default is an affirmative defense," *United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022), "the defendant does not bear the burden of pleading cause and prejudice in his motion."  *Id.*  We thus reject the government's suggestion that Draper had an obligation to anticipate this defense in his opening brief.

At the same time, we reject Draper's argument that the government forfeited the defense by failing to raise it in the district court.  It is true that "the government can [forfeit] a procedural default defense by failing to raise it," *United States v. Swisher*, 811 F.3d 299, 307 (9th Cir. 2016) (en banc), and we "will usually not allow the government to raise a petitioner's default for the first time on appeal, when it did not take the opportunity to do so before the district court," *United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir. 1999) (en banc).  But forfeiture on appeal presupposes that the government had an obligation to raise the defense in

the district court.  *Cf. Turner v. Duncan*, 158 F.3d 449, 455 n.8 (9th Cir. 1998) (finding forfeiture appropriate where "the state was obligated to raise all of its objections" to the magistrate judge).

The government had no such obligation here because the district court denied Draper's motion at the screening stage. *See* Sec. 2255 R. 4(b) (directing district courts to dismiss § 2255 motions before ordering a response from the government "[i]f it plainly appears . . . that the [defendant] is not entitled to relief").  The government "is not required to answer the motion unless a judge so orders." *Id.* R. 5(a). While nothing prohibits the government from responding before being ordered to do so, we see no reason to require the government to raise all affirmative defenses at the screening stage—at pain of forfeiture—which would undermine the screening process.  Because the district court did not order a response to Draper's § 2255 motion, the government did not forfeit its procedural default defense.

We also reject Draper's argument that he cannot procedurally default his claim because it concerns the district court's subject matter jurisdiction.  Under 18 U.S.C. § 3231, district courts have subject matter jurisdiction "[i]n every federal criminal prosecution." *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003); *see United States v. Cotton*, 535 U.S. 625, 630–31 (2002) ("[A] district court 'has jurisdiction of all crimes cognizable under the authority of the United States . . . .'" (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916))).  Draper does not dispute that § 924(c) is a federal criminal statute; he merely argues that the conduct for which he was charged and convicted does not fall within its constitutional scope.  An "objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Cotton*, 535 U.S.

at 631 (quoting *Lamar*, 240 U.S. at 65). To the extent earlier cases described indictment defects as "jurisdictional," *Cotton* overruled them. *See United States v. Salazar-Lopez*, 506 F.3d 748, 754 n.5 (9th Cir. 2007); *see also Cotton*, 535 U.S. at 630 (explaining that courts once employed an "elastic concept of jurisdiction [that] is not what the term 'jurisdiction' means today, *i.e.*, 'the courts' statutory or constitutional power to adjudicate the case'" (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998))).

Normally, we would not decide a timely assertion of procedural default in the first instance. *See, e.g.*, *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1043 n.4 (9th Cir. 2011) (remanding for the district court to consider affirmative defense). As the government acknowledges, however, Draper's ability to show prejudice turns on the merits of his claim, which the district court addressed. Because we conclude that Draper's claim lacks merit, we need not remand for the district court to consider the procedural default issue when "the result will be the same." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

## III.

Section 924(c) defines "crime of violence" in two alternative ways—through the "elements" clause and the "residual" clause. Under the elements clause, a crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Under the residual clause, a crime of violence, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In *United States v. Davis*, the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. 139 S. Ct. 2319, 2325–26 (2019). We will assume that *Davis* applies retroactively to Draper's conviction (which the government does not dispute), *see Muñoz v. United States*, 28 F.4th 973, 975 (9th Cir. 2022), and thus focus on whether § 924(c)'s elements clause encompasses voluntary manslaughter.

In making this determination, we apply the categorical approach described in *Taylor v. United States*, 495 U.S. 575, 598–600 (1990). *See Begay*, 33 F.4th at 1090. Under the categorical approach, "the facts of a given case are irrelevant," and we focus instead on "whether the elements of the statute of conviction meet the federal standard." *Id.* (quoting *Borden*, 141 S. Ct. at 1822). Here, the statute of conviction is voluntary manslaughter, 18 U.S.C. § 1112(a). Voluntary manslaughter is a crime of violence under § 924(c)'s elements clause only if the least culpable act criminalized in § 1112(a) entails "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see Begay*, 33 F.4th at 1091.

## A.

In *Borden*, the Supreme Court held that a statute defining "crime of violence" like § 924(c) does not apply to offenses that punish ordinary recklessness. *See* 141 S. Ct. at 1821–22, 1825 (interpreting 18 U.S.C. § 16(a)); *see also United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016) (observing that §§ 16 and 924(c)(3) are "virtually identical" and "we interpret their plain language in the same manner"). *Borden* explained that the statutory phrase "against . . . another," in context, has an "oppositional" meaning.

*Borden*, 141 S. Ct. at 1826. It "demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1825. The Court declined to decide whether the definition reaches offenses requiring a mens rea between recklessness and knowledge, such as the extreme recklessness required for depraved heart murder. *See id.* at 1823 n.3.

In *Begay*, we answered the question *Borden* left open, holding that depraved heart murder necessarily entails the force specified by § 924(c)(3)(A). *See Begay*, 33 F.4th at 1086. Murder, we explained, is "the unlawful killing of a human being with malice aforethought," *id.* at 1091 (quoting 18 U.S.C. § 1111(a)), and the least culpable way to kill with malice aforethought is to act with "the mental state of depraved heart." *Id.*

A depraved heart mens rea requires acting "recklessly with extreme disregard for human life." *Id.* (quoting *United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994)). It is the "functional equivalent of 'reckless and wanton, and a gross deviation from the reasonable standard of care.'" *Id.* at 1093 (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1038 (9th Cir. 2010)). Such conduct differs from conduct involving ordinary recklessness in that the perpetrator consciously disregards not just a substantial and unjustifiable risk but the very value of human life. *See id.* at 1093–94.

*Begay* concluded that depraved heart murder "is fairly characterized as extreme and necessarily oppositional," thus satisfying § 924(c)(3)'s elements clause, "because a defendant 'certainly must be aware that there are potential victims before he can act with indifference toward them.'" *Id.* at 1095 (quoting *United States v. Báez-Martínez*, 950 F.3d 119, 127 (1st Cir. 2020)).

**B.**

Federal law defines voluntary manslaughter as "the unlawful killing of a human being without malice" that occurs "[u]pon a sudden quarrel or heat of passion."  18 U.S.C. § 1112(a).  "While most voluntary manslaughter cases involve intent to kill," a defendant also commits voluntary manslaughter by "kill[ing] unintentionally but recklessly with extreme disregard for human life," provided that he "acted in the heat of passion with adequate provocation."  *United States v. Crowe*, 563 F.3d 969, 974 (9th Cir. 2009) (quoting *Paul*, 37 F.3d at 499 n.1).

In other words, voluntary manslaughter requires the same mental state as murder.  *See Paul*, 37 F.3d at 499.  It is only the attendant circumstances—a "finding of heat of passion and adequate provocation"—that "negates the malice that would otherwise attach" to voluntary manslaughter.  *Id.*; *see also Comber v. United States*, 584 A.2d 26, 37 (D.C. 1990) (en banc) ("[I]n all voluntary manslaughters, the perpetrator acts with a state of mind which, but for the presence of legally recognized mitigating circumstances, would constitute malice aforethought, as the phrase has been defined for purposes of second-degree murder.").[1]  We describe "evidence of a sudden quarrel or

---

[1] While many jurisdictions treat heat of passion as a mitigating factor rather than an element of the defendant's mental state, not all do.  Florida, for example, appears to view heat of passion as impacting the defendant's mental state.  *See Taylor v. State*, 316 So. 3d 420, 427 (Fla. Ct. App. 2021) ("At the heart of the heat of passion defense is adequate provocation and the defendant's state of mind.").  Our discussion is limited to 18 U.S.C. § 1112(a).  We express no opinion as to whether voluntary manslaughter or its equivalent under other federal statutes or in other jurisdictions constitutes a crime of violence under 18 U.S.C. § 924(c).

heat of passion" as "a defense to [a] murder charge," *Begay*, 33 F.4th at 1088, because absent those mitigating circumstances, the crime of voluntary manslaughter would be murder.

Draper argues that "the lack of malice attendant to voluntary manslaughter" distinguishes it from murder, but that distinction makes no difference in this context. Malice aforethought has a legal meaning that "does not even approximate its literal meaning." *Pineda-Doval*, 614 F.3d at 1037–38 (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.1 (2d ed. 2003)). It is a catchall element covering "four different kinds of mental states," including "killings that, while not specifically intended or planned, were grievous enough to be considered murder." *Id.* at 1038. While malice distinguishes murder from voluntary manslaughter based on the defendant's culpability in light of the circumstances, culpability plays no role in determining whether an offense is a crime of violence under § 924(c).

According to Draper, malice makes a difference because "killing in the heat of passion or upon provocation renders an ordinary person unable to fully comprehend the 'risk to human life.'" That is incorrect. "[T]he criminal law generally permits a finding of recklessness only when persons disregard a risk of harm of which they are aware," *United States v. Albers*, 226 F.3d 989, 995 (9th Cir. 2000), and manslaughter is no exception. The state of mind for a depraved heart killing—a "subjective awareness" that one's conduct creates "a very high degree of risk of serious bodily injury or death," *Pineda-Doval*, 614 F.3d at 1038 n.13—is the same for murder and voluntary manslaughter. *See Paul*, 37 F.3d at 499.

Essentially, Draper advocates for the minority view of the law: that the defendant's emotional disturbance "must be so great as to destroy the intent to kill"—or, as relevant here, the ability to appreciate the extreme recklessness of his actions—in order to reduce a homicide from murder to voluntary manslaughter.[2] 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.2(a) (3d ed. 2022). But in the Ninth Circuit and most other jurisdictions, voluntary manslaughter merely requires the defendant to show that the emotional disturbance "made him lose the normal self-control which enables him to resist any temptation to slay another person," *id.*, not that it affected his mental state. *See* 40 Am. Jur. 2d *Homicide* § 45 (2022) ("A conviction for voluntary manslaughter requires that the defendant acted either with an

---

[2] Jurisdictions that appear to adopt the minority view generally categorize homicide differently than federal law. For example, Montana's offense of mitigated deliberate homicide is akin to voluntary manslaughter in that it "is a lesser included offense of deliberate homicide" in which the defendant acts "under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." Mont. Code Ann. § 45-5-103(1)–(2). Montana treats extreme mental or emotional stress as part of the defendant's mental state. *See Park v. Mont. Sixth Jud. Dist. Ct.*, 961 P.2d 1267, 1271 (Mont. 1998) ("Mitigated deliberate homicide . . . clearly depends on proof of [the defendant's] mental state at the time of the acts alleged . . . ."). But Montana does not recognize a depraved heart theory of homicide. Aside from felony murders, unlawful killings are either deliberate (requiring a purposeful or knowing mens rea), *see* Mont. Code Ann. § 45-5-102(1)(a), or negligent, *see id.* § 45-5-104(1). Hawaii, which similarly divides homicide between intentional and reckless killings and lacks a depraved heart theory of murder, *see* Haw. Rev. Stat. §§ 707-701.5(1) (second degree murder), 707-702(1)(a) (manslaughter), treats the extreme mental or emotional disturbance that reduces murder to manslaughter as "a mitigating factor" rather than "the mental state of a defendant." *State v. Adviento*, 319 P.3d 1131, 1146 (Haw. 2014) (quoting *State v. Dumlao*, 715 P.2d 822, 825 (Haw. Ct. App. 1986)).

intent to kill or with conscious disregard for life, i.e. the mental state ordinarily sufficient to constitute malice aforethought."); *see also Ortiz v. Garland*, 25 F.4th 1223, 1227 (9th Cir. 2022) ("The [voluntary manslaughter] statute's reference to 'without malice' merely explains that voluntary manslaughter involves mitigating circumstances . . . that negate the malice aforethought required for murder.  It does not mean that voluntary manslaughter lacks any culpable mental state.  To the contrary, a conscious disregard for life or specific intent to kill is still required.").**[3]**

## C.

Draper argues that *Begay* and other case law establishes that "manslaughter" requires "a lesser recklessness than murder."  That is true only with respect to *involuntary* manslaughter.  *See Begay*, 33 F.4th at 1092 n.7 ("[I]nvoluntary manslaughter—which requires a mens rea of 'gross negligence'—is not a crime of violence under § 924(c)(3)." (citing *Benally*, 843 F.3d at 354)).  We differentiate "involuntary manslaughter . . . from voluntary

---

[3] *Ortiz* involved section 192(a) of the California Penal Code, which is worded identically and interpreted similarly to the federal statute.  *See United States v. Rivera-Muniz*, 854 F.3d 1047, 1053 (9th Cir. 2017) ("California Penal Code section 192(a) does not stray from the generic definition of voluntary manslaughter . . . .").  In *Quijada-Aguilar v. Lynch*, we held that section 192(a) is not a crime of violence under 18 U.S.C. § 16, *see* 799 F.3d 1303, 1306–07 (9th Cir. 2015), a holding that presumably would apply to § 924(c) as well.  But our reasoning, that "the underlying offense must require proof of an *intentional* use of force," *id.* at 1306 (quoting *United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008)), is no longer tenable.  *See Begay*, 33 F.4th at 1094 ("*Borden* sufficiently undermines [*Gomez-Leon* and other Ninth Circuit] authority suggesting that anything less than intentional conduct does not qualify as a crime of violence.").

manslaughter . . . by the absence of [either] *intent*," *United States v. Quintero*, 21 F.3d 885, 891 n.3 (9th Cir. 1994), or "reckless[ness] with extreme disregard for human life," *Paul*, 37 F.3d at 499 n.1. Whereas voluntary manslaughter has the same mental state as murder but is less culpable due to mitigating circumstances, involuntary manslaughter is less culpable than voluntary manslaughter because "the offender's mental state [does not] meet the traditional malice requirements." *Id.* at 499.

Nothing in *Begay* is to the contrary. *Begay* observed that "there are varying degrees of recklessness" and "[t]he categories of criminal homicide reflect the[se] distinctions." 33 F.4th at 1093–94. As an example, we contrasted depraved heart murder with "manslaughter" without specifying the type of manslaughter. We stated: "[t]he difference between the recklessness that displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and the recklessness that amounts only to manslaughter lies in the quality of awareness of the risk." *Id.* at 1094 (cleaned up) (quoting *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987)). This statement refers specifically to involuntary manslaughter. *See Lesina*, 833 F.2d at 158 (faulting jury instructions for failing "to differentiate second degree murder from involuntary manslaughter").

Similarly, our statement that criminal homicide "constitutes *manslaughter* when . . . it is committed recklessly" but "constitutes *murder* when . . . it is committed recklessly under circumstances manifesting *extreme indifference to the value of human life*," *Begay*, 33 F.4th at 1094 (first quoting Model Penal Code § 210.3(1)(a); and then quoting Model Penal Code § 210.2(1)(b)), contrasted murder with involuntary manslaughter. The Model Penal

Code, unlike § 1112, does not formally label manslaughter as either voluntary or involuntary. But the provision we cited, section 210.3(a), corresponds to involuntary manslaughter. Section 210.3(b), which applies to "a homicide which would . . . be murder" but for "the influence of extreme mental or emotional disturbance for which there is [an objectively] reasonable explanation or excuse," corresponds to voluntary manslaughter.

## D.

Draper relies on several canons of statutory construction that, he argues, reveal Congress did not intend § 924(c)'s elements clause to include voluntary manslaughter. We disagree.

## 1.

Draper first highlights what he sees as significant differences between the "crime of violence" definitions in § 924(c) and the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) (en banc) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004))). The ACCA enumerates four offenses that constitute crimes of violence, none of which are voluntary manslaughter, *see* 18 U.S.C. § 924(e)(2)(B)(ii), while § 924(c)(3) does not enumerate any violent offenses. But the ACCA's enumerated offenses "illustrate the kinds of crimes that fall within the [*residual* clause's] scope." *Begay v. United States*, 553 U.S. 137, 142 (2008) (emphasis added). They shed little light on the crimes that satisfy the elements clause. If the two clauses covered precisely the same offenses, there would be no need for both.

The elements clauses of the ACCA and § 924(c) are identical in all but one respect. The ACCA applies to "physical force against [another's] person," 18 U.S.C. § 924(e)(2)(B)(i), while § 924(c) applies to "physical force against [another's] person *or property*," 18 U.S.C. § 924(c)(3)(A) (emphasis added). This difference suggests that Congress intended a broader elements clause in § 924(c) than in the ACCA. *See Begay*, 553 U.S. at 144 (explaining that "Congress rejected a broad proposal [for the ACCA] that would have covered *every* offense that involved a substantial risk of the use of '"physical force against the person or property of another"'" (quoting *Taylor*, 495 U.S. at 583)).

**2.**

Draper also compares § 924(c) with Sentencing Guidelines section 4B1.2(a), which once contained a "crime of violence" definition matching the ACCA's. Following *Johnson*, the Sentencing Commission modified section 4B1.2(a)'s definition by removing the residual clause and adding several enumerated offenses, including voluntary manslaughter. *See* Notice of Submission to Congress of Amendment to the Sentencing Guidelines, 81 Fed. Reg. 4741, 4743 (Jan. 27, 2016). Draper argues that it would have been superfluous to include voluntary manslaughter in section 4B1.2(a)'s enumerated offenses clause if section 4B1.2(a)'s elements clause—which is similar to § 924(c)'s—already encompassed the offense. However, the Sentencing Commission expressly rejected this implication. *See id.* ("Importantly, [an elements clause] offense may, but need not, be specifically enumerated in [the enumerated offenses clause] to qualify as a crime of violence.").

Moreover, the Sentencing Commission's decision to update Guidelines section 4B1.2(a) does not explain Congress's inaction concerning § 924 in the wake of *Johnson*. *See Kimbrough v. United States*, 552 U.S. 85, 106 (2007) ("Ordinarily, we resist reading congressional intent into congressional inaction."). Draper points to other parts of § 924(c) that Congress amended after *Johnson*, but these amendments had nothing to do with the Supreme Court's ruling and are unilluminating.

**3.**

Draper relies on the legislative history of the First Step Act, which allows inmates convicted of voluntary manslaughter to earn an earlier release through certain activities but excludes those convicted of murder from participating. *See* 18 U.S.C. § 3632(d)(4)(A), (D)(xxv). This provision did not modify § 924(c) and has nothing to do with sentencing. More relevantly, § 924(c)'s "legislative history indicates that Congress did not intend to limit 'crimes of violence' to crimes of specific intent." *United States v. Springfield*, 829 F.2d 860, 863 n.1 (9th Cir. 1987), *abrogated on other grounds by Benally*; *see* S. Rep. No. 97-307, at 890–91 (1982) ("Since no culpability level is prescribed in this section, the applicable state of mind that must be shown is, at a minimum, 'reckless,' i.e., that the defendant was conscious of but disregarded the substantial risk that the circumstances existed.").

**4.**

Draper also invokes the rule of lenity, which "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Kelly*, 874 F.3d 1037, 1049 (9th Cir. 2017) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion)). The

rule applies, however, only if "a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating polices of the statute." *United States v. Merrell*, 37 F.4th 571, 577 (9th Cir. 2022) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Because the legislative history suggests that Congress intended § 924(c) to apply to voluntary manslaughter, the rule of lenity does not apply.

## IV.

For purposes of § 924(c), voluntary manslaughter has the same mental state as murder—intent to commit a violent act against another or recklessness with extreme indifference to human life. Consequently, *Begay* resolves this case. Voluntary manslaughter is a crime of violence under § 924(c) because, like murder, it requires at least an "extreme and necessarily oppositional" state of mind. *Begay*, 33 F.4th at 1095. The district court properly denied Draper's § 2255 motion.

**AFFIRMED.**